**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 24-cv-9894<br><br>District Judge Jeffrey I. Cummings |

# DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION 1

FACTUAL BACKGROUND 2

A. Meta's Pixel 2

B. Nebula's Privacy Policy and Cookie Policy 3

C. Meta's Terms of Service, Privacy Policy, and Cookies Policy 3

D. Plaintiff's Allegations 4

LEGAL STANDARD 5

PLAINTIFF'S UNJUST ENRICHMENT CLAIM AGAINST META FAILS 6

A. Plaintiff's Claim Is Barred By The Existence Of An Express Contract Between Her And Meta 8

B. Plaintiff's Claim Against Meta Does Not Satisfy Any Of *HPI*'s Three Disjunctive Requirements 9

C. Plaintiff Does Not Plead That Meta Retained A Benefit To Her Detriment 15

D. Plaintiff Does Not Allege That Meta's Retention Of A Benefit Is Inequitable 16

E. Plaintiff's Claim Fails Under California Law As Well 17

CONCLUSION 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aiello v. Invision Mktg. Sols.*,
2019 WL 1875354 (N.D. Ill. Apr. 26, 2019) ........ 17

*Annous v. Blaschek*,
2019 WL 9667844 (C.D. Ill. Mar. 26, 2019), *aff'd*, 799 F. App'x 402 (7th Cir. 2020) ........ 14

*Asch v. Teller, Levit & Silvertrust, P.C.*,
2003 WL 22232801 (N.D. Ill. Sept. 26, 2003) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 6

*Ass'n Benefit Servs. v. Advanceps Holding Corp.*,
2004 WL 2101928 (N.D. Ill. Sep. 21, 2004) ........ 15, 16

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) ........ 10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 15

*Bank of Am., N.A. v. Knight*,
875 F. Supp. 2d 837 (N.D. Ill. 2012) ........ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Blythe Holdings, Inc. v. DeAngelis*,
750 F.3d 653 (7th Cir. 2014) ........ 6

*Cement-Lock v. Gas Tech. Inst.*,
523 F. Supp. 2d 827 (N.D. Ill. 2007) ........ 12

*Cherry v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*,
2019 WL 4014066 (N.D. Ill. Aug. 25, 2019) ........ 12

*City of Oakland v. Oakland Raiders*,
83 Cal. App. 5th 458 (2022) ........ 7, 18

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ........ 7

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 1, 10, 18

*Filet Menu, Inc. v. Cheng*,
71 Cal. App. 4th 1276 (1999) .......... 18

*Hatcher v. Hatcher*,
158 N.E.3d 326 (Ill. App. 2020) .......... 14

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) .......... 7, 18

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022) .......... 15, 16

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
2006 WL 3827326 (N.D. Ill. Dec. 27, 2006) .......... 7, 12, 13

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .......... 7, 9, 10

*Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*,
577 F. Supp. 2d 1023 (N.D. Ill. 2008) .......... 12

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 940 (7th Cir. 2012) .......... 15

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .......... 14

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
44 Cal. App. 4th 194 (1996) .......... 6, 17

*Lebrun v. CBS Television Studios, Inc.*,
68 Cal. App. 5th 199 (2021) .......... 18

*Lloyd v. Facebook*,
2023 WL 1802415 (N.D. Cal. Feb. 7, 2023), *aff'd in part and rev'd in part on other grounds*, 2024 WL 3325389 (9th Cir. July 8, 2024) .......... 8, 12

*McNeil v. Salvation Army*,
754 F. App'x 469 (7th Cir. 2019) .......... 18

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 18

*Paolino v. Hussain Egan Berdersky & Franczyk, L.L.C.*,
2006 WL 1980200 (N.D. Ill. July 11, 2006) .......... 16

*Pelfresne v. Vill. of Lindenhurst*,
2005 WL 2322228 (N.D. Ill. Sept. 16, 2005) .............................................................. 9

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ............................................................................. 7, 17, 18

*Plesnik v. Big Lots Stores, Inc.*,
2014 WL 2024966 (S.D. Ill. May 16, 2014).................................................................. 14, 17

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ............................................................... 13, 14, 16

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ......................................................................................... 6, 17

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ............................................................................................ 12

*Solar Micronics, Inc. v. Reddy*,
2023 WL 4564566 (N.D. Ill. July 17, 2023)......................................................................... 6, 7

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ...................................................................... 13, 16

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ................................................................................................ 7

*Util. Audit, Inc. v. Horace Mann Serv. Corp.*,
383 F.3d 683 (7th Cir. 2004) ................................................................................................ 9

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ................................................................................................ 6

**STATUTES**

Cal. Civ. Proc. Code § 339(1)........................................................................................................ 8

Illinois Genetic Information Privacy Act, 410 ILCS 513/1 *et seq*................................................. 1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Meta Platforms, Inc. ("Meta") respectfully moves to dismiss the Complaint (Dkt. 1) with prejudice. Counsel for Meta conferred with Plaintiff's counsel, and Plaintiff opposes this Motion. The parties propose that Plaintiff's response be due on February 11, 2025, and Meta's reply on March 4, 2025.

**INTRODUCTION**

Plaintiff's sole claim against Meta seeks to hold it liable for a *different* party's alleged disclosure of data about her activity on *that* party's website. Plaintiff claims that Defendant Nebula Genomics, Inc., a DNA testing company, disclosed to Meta that she registered with, and purchased a testing kit from, Nebula. She does not allege that Meta disclosed anything to anybody, which is why she does not (and cannot) bring her principal claim—under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1 *et seq*.—against Meta. Instead, she sues Meta for common law unjust enrichment. Plaintiff does not specify whether she is suing under Illinois or California law (the law specified in Meta's Terms of Service), but her claim fails under either.

The Complaint alleges that Nebula, like many website owners, installs cookies and tracking technology—including the Meta Pixel, source code that Meta makes publicly available to businesses—to help it understand how visitors engage with its website and to improve its advertising. As Judge Chhabria recognized, there is nothing "inherently unlawful" about the Meta Pixel. *Doe I v. Google LLC*, 2024 WL 3490744, at *4 (N.D. Cal. July 22, 2024). The Complaint further alleges that Nebula programmed the Meta Pixel to send Meta information when users purchase or register a testing kit on the Nebula website. But Meta's terms governing use of its Pixel forbid website owners like Nebula from sharing with Meta data that includes "health" or "sensitive" information. While Plaintiff speculates that Meta benefitted from the receipt of such data to hone its ad targeting capabilities, she never alleges that Meta actually *used* data in this way

or that she was served any particular ads as a result. All she alleges is that Meta received data indicating that she registered with Nebula and purchased a test from it.

These allegations fail to state an unjust enrichment claim against Meta for several independent reasons. *First*, Plaintiff is a Facebook user, and the existence of express Terms of Use governing her relationship with Meta defeats her unjust enrichment claim as a matter of law. *Second*, Plaintiff alleges that Nebula, not Plaintiff herself, transferred the alleged benefit to Meta. In these situations, Illinois law holds that retention of the alleged benefit is not unjust except in three narrow circumstances—none of which Plaintiff pleads. *Third*, Plaintiff does not identify any detriment suffered by her that is connected to Meta's receipt of her purchase and registration data or to Meta's ad proceeds. *Fourth*, there is nothing inequitable about Meta's retention of that data or the (alleged) ad revenues Meta earned from it. Her claim is doomed under California law for the same reasons and is time-barred as well.

## FACTUAL BACKGROUND

### A. Meta's Pixel

A "pixel" is a common "business analytics tool" offered by numerous companies and used across the internet. Dkt. 1 ¶ 10. Meta's pixel—called the Meta Pixel and formerly the Facebook Pixel—is a piece of source code that website owners integrate into their websites. *Id.* ¶¶ 33, 42. The Meta Pixel helps businesses understand how users are interacting with their website (*e.g.*, adding items to their shopping cart, making a purchase) and to analyze the effectiveness of their ads. *Id.* ¶¶ 33 n.11, 41, 44, 46. Website owners (not Meta) decide whether to install the Meta Pixel on their webpages and "program the pixel to contact Meta when users engage in specific conduct on the business's website." *Id.* ¶ 44.

Meta's Business Tools Terms limit the data that website owners can send through the Meta Pixel and expressly forbid them from sharing "sensitive information," as defined by applicable

law. Ex. 11 at 1.[1] Website owners must represent that they have "the necessary rights and permissions and a lawful basis" to collect and use data sent to Meta through the Pixel and must not send "health" or "sensitive" data. *Id.* Additionally, website owners must tell their users "that third parties, including Meta," may use pixels or cookies "to collect or receive information" for measurement, ad targeting, and delivery. *Id.* at 2.

### B. Nebula's Privacy Policy and Cookie Policy

Nebula tells its users that it may share their information with third parties (including Meta) for measurement and advertising purposes. Specifically, Nebula's Privacy Policy, to which Plaintiff agreed when she signed up, *see* Dkt. 1 ¶ 97; Ex. 19, tells users that Nebula collects information and shares it with third parties for "marketing and analytics" purposes. Ex. 13 at 5-6. This includes "user data," which encompasses data about the user's interactions with Nebula, such as "order history" and "DNA Test Kit Code." Ex. 14 at 2-3. Nebula's Cookie Policy likewise tells users that Nebula "may include web beacons and cookies from third-party service providers," including the "Facebook Pixel," for advertising and analytics purposes. Ex. 15 at 2-3.

### C. Meta's Terms of Service, Privacy Policy, and Cookies Policy

Meta tells Facebook users that it may receive their data from third-party websites using the Meta Pixel and may use that data for advertising purposes. Each Facebook user, including Plaintiff, Dkt. 1 ¶ 101, must agree to Meta's Terms of Service, Privacy Policy, and Cookies Policy, which explain how Meta collects and uses data. Exs. 1-10.[2] Meta's Terms state that "businesses and organizations pay us to show you ads for their products" and that Meta "use[s] your personal

---

[1] All references to Exhibits are to the Exhibits attached to the contemporaneously filed Rizzoni Declaration in Support of Meta's Motion to Dismiss.

[2] All cites to Meta's terms and policies refer to the versions in effect from March 2021 to July 2023, the time when Plaintiff allegedly maintained a Nebula membership. Dkt. 1 ¶¶ 97-99; *see* Ex. 9 at 7 (explaining that "[o]nce any updated Terms are in effect, you will be bound by them if you continue to use [Meta] Products").

data to help determine which ads to show you." Ex. 9 at 1. To use Meta's products, users agree that Meta can serve them ads that it thinks may be "relevant to you and your interests." *Id.* California law governs claims arising out of or relating to the Terms. Ex. 8 at 8.

Meta's Privacy Policy discloses that it may receive data about users' off-Facebook activity, match it to user accounts, and use it for advertising purposes. The Policy in effect in March 2021 (then known as the Data Policy) disclosed that Meta "receive[s] information about you and your activities on and off Facebook from third-party partners" and may use that information to serve the user more relevant advertising. Ex. 1 at 2. Later versions of the Policy make similar disclosures, including that "app developers … send [Meta] information through Meta Business Tools" about users' activities, Ex. 2 at 3—such as data about "[w]ebsites you visit," "cookie data, like through … the Meta Pixel," and "purchase or transactions you make," Ex. 3 at 7—and that all this data may be matched to user accounts and used for targeted advertising, *id.*; Ex. 4 at 7.

Meta's Cookies Policy tells users that Meta "use[s] cookies … to store and receive identifiers" if they "have a Facebook account" or "visit other websites and apps that use the Meta Products." Ex. 6 at 1. The Policy adds that Meta "receives information" through cookies, "including device information and information about your activity," when users visit websites that have "incorporate[d] Meta technologies." *Id.* at 4. The Policy discloses that Meta uses cookies to "deliver ads to people who have previously visited a business's website or purchased its products" and uses the "c_user" cookie to "verify your account" and "remember your browser." *Id*. at 2.

**D. Plaintiff's Allegations**

Plaintiff alleges that in or about March 2021, she created an account with Nebula and purchased a Nebula genomics test. Dkt. 1 ¶ 97. She alleges that she renewed her Nebula membership in July 2021 and July 2022, and that she cancelled her membership some time thereafter. *Id.* ¶ 99. Plaintiff further alleges that, during her membership, Nebula had "installed

the Facebook pixel on its website" and "programmed [it] to collect and transmit to Meta" two pieces of information. *Id.* ¶¶ 47-48. First, she claims that "once a user signs up on Nebula.org," Nebula sent information to Meta "confirming that the customer has completed the signup process and registered a DNA test kit." *Id.* ¶ 50. Second, she claims that "Nebula also discloses to Meta when a customer has purchased a testing kit." *Id.* ¶ 51.

Plaintiff also alleges that "Nebula programmed its website to send this information to Meta" alongside the user's "Facebook ID contained in the c_user cookie." *Id.* ¶¶ 47-49. According to Plaintiff, "[w]hen a user logs into Facebook using an internet browser," Meta places the "c_user" cookie on the user's browser. *Id.* ¶¶ 37-39. Plaintiff claims that Meta uses this cookie to "match up a user's activity across devices" and to "compile a comprehensive user profile … and see which websites were visited on each device." *Id.* ¶¶ 39-40. She also alleges that this matching enables Meta to collect vast amounts of data about users' interests and behavior and that this data is used to target ads, "allow[ing] Meta to generate billions in advertising revenue." *Id.*

Plaintiff claims that Nebula, not Meta, violated GIPA by disclosing that she "has undergone genetic testing" without obtaining "consent to send such information to Meta." *Id.* ¶¶ 52, 117-125. As for Meta, Plaintiff asserts an unjust enrichment claim based on allegations that "Nebula has communicated to Meta that [she] has undergone genetic testing" "without authorization" "to enhance the profile [Meta] ha[s] built for" Plaintiff and to "enabl[e] [Meta] to sell more ads for more money." *Id.* ¶¶ 52, 127-134. She demands that Meta "disgorge into a common fund or constructive trust" proceeds it "unjustly received" by "Nebula's unlawful disclosure." *Id.* ¶ 134.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citation omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. A court must credit a plaintiff's well-pleaded allegations but not "legal conclusion[s] couched as [] factual allegation[s]," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Bald speculation does not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

**PLAINTIFF'S UNJUST ENRICHMENT CLAIM AGAINST META FAILS**

Plaintiff does not specify whether she believes California or Illinois law governs her unjust enrichment claim against Meta. Her invocation of and focus on GIPA suggests that she is suing under Illinois law. But as a Facebook user, she assented to the California choice-of-law clause in Meta's Terms. In any event, her claim fails under either California or Illinois law.

In both jurisdictions, an unjust enrichment claim is "based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (citation omitted); *accord Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) (same). That alone ends the inquiry, given Plaintiff's assent to Meta's Terms of Service.

Unjust enrichment is not a standalone cause of action. *See Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023) (Cummings, J.); *accord Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (unjust enrichment is not an independent cause of action and is instead a "quasi-contract claim seeking restitution"). Rather, unjust

enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence." *Solar Micronics*, 2023 WL 4564566, at *6 (quoting *Toulon v. Cont'l Cas. Co.,* 877 F.3d 725, 741 (7th Cir. 2017)); *accord Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) (in dismissing unjust enrichment claim, explaining that "[t]here being no actionable wrong, there is no basis for the relief"). Plaintiff does not allege a separate violation of law against Meta, but instead bases her claim against Meta on *Nebula's* alleged unlawful disclosure of data about her to Meta in violation of GIPA.[3]

To state an unjust enrichment claim, Plaintiff must allege that Meta (a) "'unjustly retained a benefit'" (b) "'to [her] detriment,'" and that (c) Meta's "'retention of the benefit violates fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678 (Ill. 1989) ("*HPI*")); *accord Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (similar). Where, as here, "the plaintiff is seeking recovery of a benefit that was transferred to [Meta] by a third party," to plead that Meta's "retention of the benefit would be unjust" under the first element, Plaintiff must allege one of three things: (a) that "the benefit should have been given to the plaintiff, but [Nebula] mistakenly gave it to [Meta] instead"; (b) that Meta "procured the benefit from [Nebula] through some type of wrongful conduct"; or (c) that Plaintiff "for some other reason had a better claim to the benefit" than Meta. *HPI*, 545 N.E.2d at 679. "Under each scenario, the plaintiff may recover under the theory of unjust enrichment only if it can show that it—rather than the defendant—is entitled to the benefit." *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2006 WL 3827326, at *3 (N.D. Ill. Dec. 27, 2006); *accord City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 479 (2022) (declining to award plaintiff the Raiders'

[3] Dismissal of the GIPA claim against Nebula would thus be another reason to dismiss this claim.

increased value from an allegedly wrongful relocation fee where plaintiff did not have "a better legal or equitable right" to the increased value or the fee). And in California, unjust enrichment claims are subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 339(1).

Plaintiff's claim against Meta should be dismissed for multiple reasons. First, it is barred by the existence of an express contract governing her relationship with Meta. Second, the claim fails because Plaintiff does not plead any of *HPI*'s three grounds for establishing unjust retention of a benefit. Third, she does not plead any detriment based on Meta's alleged receipt of data about her or its ad receipts. Fourth, she does not plead facts indicating that Meta's alleged retention of any benefit is inequitable. And if governed by California law, her claim is time-barred.

### A. Plaintiff's Claim Is Barred By The Existence Of An Express Contract Between Her And Meta

Plaintiff's express contract with Meta dooms her claim. As a Facebook user, Plaintiff is bound by Meta's Terms, which "govern" the parties' relationship. *Lloyd v. Facebook*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023) ("Meta's relationship with [its] users … is governed by its Terms of Service … to which all users must agree to create a Facebook account"), *aff'd in part and rev'd in part on other grounds*, 2024 WL 3325389 (9th Cir. July 8, 2024).

Meta's Terms cover the same "subject matter" of Plaintiff's claim: Meta's receipt and use of data about her off-Facebook activity. Plaintiff's claim is premised on Meta's alleged use, for advertising purposes, of purchase and registration data it received from Nebula. Dkt. 1 ¶ 131. But Meta's Terms expressly disclose that "businesses and organizations" (like Nebula) pay Meta "to show you ads for their products" and that Meta "use[s] your personal data to help determine which ads to show you." Ex. 8 at 1; Ex. 9 at 1. Meta's Terms also link to its Data Policy, which further discloses that Meta "collect[s] information when you visit or use third-party websites and apps that use our Services," including "information the … website [owner] provides to … us," and that "we

use all of the information we have about you to show you relevant ads[.]" Ex. 1 at 2, 5. Plaintiff's claim also implicates the use of "c_user cookies" to match off-Facebook activity with particular users and thus "enhance" profiles that Plaintiff claims Meta builds for them, Dkt. 1 ¶¶ 39, 131—yet Meta's Terms link to its Cookies Policy, which explains that Meta uses cookies for "personalising content, tailoring and measuring ads" and "providing insights about the people who use the Meta Products … [and] the ads, websites, and apps of … the businesses that use the Meta Products." Ex. 6 at 1, 3. The Cookies Policy also discloses that the c_user cookie is used to "help [Facebook] remember your browser so you don't have to keep logging in to Facebook and so you can more easily log in to Facebook via third-party apps and websites." *Id.* at 2.

Under settled law, the fact that Meta's Terms cover the same "subject matter" of Plaintiff's claim compels its dismissal. *See Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) (affirming dismissal of unjust enrichment claim for this reason).

### B. Plaintiff's Claim Against Meta Does Not Satisfy Any Of *HPI*'s Three Disjunctive Requirements For Establishing Unjust Retention Of A Benefit

Plaintiff does not plead that Meta's retention of any benefit from receiving data about her is unjust, because her allegations do not satisfy any of *HPI*'s three disjunctive requirements: (1) that Nebula "mistakenly" sent this data to Meta; (2) that Meta obtained this data through "wrongful conduct"; or (3) that she has "a better claim to the benefit" than Meta. *HPI*, 545 N.E.2d at 679.

**1. Mistake.** As to the first *HPI* requirement, Plaintiff does not plead that Nebula *mistakenly* shared information about her with Meta rather than with Plaintiff. Plaintiff instead alleges that Nebula *intentionally* installed the Meta Pixel to send Meta data about her. Dkt. 1 ¶¶ 47-51. That Nebula "knew about and approved" this practice is confirmed by the fact that it disclosed to users that it shared user information with Meta for marketing purposes. Ex. 15 at 2-3; *see Pelfresne v. Vill. of Lindenhurst*, 2005 WL 2322228, at *12 (N.D. Ill. Sept. 16, 2005).

**<u>2. Wrongful Conduct</u>.** Nor does Plaintiff satisfy *HPI*'s "wrongful conduct" requirement because she does not allege that Meta acted unlawfully in receiving data from Nebula. Plaintiff's conclusory allegations that Meta engaged in "wrongful conduct" and collected data "without authorization and through inequitable means," Dkt. 1 ¶¶ 128-129, are insufficient. Instead, she must "set out specific factual allegations which would support the conclusion that [Meta's] conduct in procuring [information] from [Nebula] was wrongful." *HPI*, 545 N.E.2d at 679-80 (affirming dismissal for lack of non-conclusory allegations that defendant acted wrongfully).

The Complaint does not make specific allegations to support Plaintiff's conclusory assertions that Meta acted "wrongfully" in receiving data from Nebula. At the outset, she does not allege that Meta took any affirmative steps to "procure" data from Nebula; her allegations establish at most that Meta received only the data that Nebula *chose* to share with it. In fact, there is no allegation that Meta did *anything* affirmative here at all: Meta makes its Pixel available to the public at large and Nebula, on its own accord, chose to install it and program it. But even if Meta had taken any affirmative steps, Plaintiff does not allege that Meta "violated the law," such as by defrauding Nebula to send it data about her, as is required to plead "that conduct rises to the level of wrongful[] in the context of an unjust enrichment claim." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

To the contrary, Plaintiff alleges that *Nebula*—not Meta—"programmed" the Pixel for that purpose. Dkt. 1 ¶¶ 46-48. Yet there is "nothing inherently unlawful" about Meta publicly offering its Pixel or cookies to website owners, even if websites like Nebula, which may collect allegedly sensitive information, choose to install it. *Doe I*, 2024 WL 3490744, at *3-4 (dismissing privacy-related claims based on healthcare websites' use of Google's pixel, noting that "[t]here is nothing inherently unlawful about Google offering its source code to health care providers"). And

even if Plaintiff's Nebula registration and purchase history were sensitive, Meta tells website owners *not* to send it such information—and, as a condition of using Meta's Pixel, website owners must agree not to send information that they reasonably should know "includes health, financial information or other categories of sensitive information." Ex. 11 at 1. Thus, not only did Meta not engage in specific affirmative conduct towards Nebula, it prohibited websites like Nebula from sending it protected data. Because Plaintiff fails to plead Meta acquired data from Nebula wrongfully, she does not satisfy *HPI*'s second prong. *See Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 854 (N.D. Ill. 2012) (dismissing claim for failure to explain impropriety of conduct).

As for Plaintiff's allegation that Meta obtained data "without authorization," Nebula's and Meta's disclosures and policies conclusively prove otherwise. Citing generic statements on Nebula's website, Plaintiff alleges that she believed, based on "Nebula's professed commitment to safeguarding the privacy of its customers' genetic information," that it would not share with Meta data about her. Dkt. 1 ¶¶ 30-31, 103. But *other* statements on Nebula's website specifically disclose the conduct about which she now complains. To register a test kit with Nebula, *see id.* ¶ 50, a user must assent to Nebula's Privacy Policy, *see* Ex. 19, which discloses that Nebula shares "User Data" (including order history) with "[m]arketing and analytics service providers" and "may share your User Data with such third parties in order to register you as an existing user," Ex. 14 at 4; *see also* Ex. 13 at 4 (same). Nebula's Cookie Policy also discloses its use of "web beacons and cookies from third-party service providers," *including* the "Facebook Pixel," for advertising and analytics. Ex. 15 at 2-3. Plaintiff thus *did* authorize Nebula to share with Meta data about her.

Additionally, regardless of whether *Nebula* secured Plaintiff's consent to share information about her actions on its site, Meta's Terms of Service, Privacy Policy, and Cookies Policy—to which all Facebook users (including Plaintiff) must agree—confirm that Plaintiff gave *Meta*

consent to *receive* that information. *See Lloyd*, 2023 WL 1802415, at *1 ("Meta's relationship with [its] users … is governed by its Terms … to which all users must agree to create a Facebook account."); *Lloyd*, 2024 WL 3325389, at *2 ("[Meta's] data policy gives clear notice that third party partners may share data with [Meta]."); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) ("A reasonable person viewing [Meta's] disclosures would understand that [Meta] maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes."). Thus, not only does Plaintiff fail to plead "wrongful conduct" by Meta based on lack of "authorization," Meta's policies establish that it received such authorization.

Regardless, even if Plaintiff had pleaded that Meta wrongfully obtained from Nebula data about her, her claims fall outside the second *HPI* requirement because she does not allege—as she must—that she is entitled to the Meta advertising revenue she seeks to recover. Dkt. 1 ¶ 134 (requesting disgorgement of Meta's ad "proceeds"). Specifically, Plaintiff can satisfy this *HPI* requirement only by pleading that *she*, "rather than [Meta,] [] is entitled to the benefit," which requires pleading that the benefit enjoyed by Meta was *meant for* her. *Hollinger*, 2006 WL 3827326, at *3 (under each of *HPI*'s three prongs, a plaintiff may recover only benefits to which plaintiff, rather than defendant, is entitled); *see also Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 863 (N.D. Ill. 2007) (dismissing claim where plaintiff was not entitled to defendants' "increased salaries and bonuses allegedly paid," even though those payments were allegedly enabled by fraud) (internal quotation marks and citations omitted).

That is not what Plaintiff claims here. She does not allege that ad receipts that *others* (advertisers) paid to Meta "belong" to her "in any meaningful sense," such that she has "a right to that property." *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1050 (N.D. Ill. 2008); *see also Cherry v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, 2019 WL

4014066, at *6 (N.D. Ill. Aug. 25, 2019) (dismissing unjust enrichment claim where plaintiff had no right to funds that defendant received). And merely claiming that Meta "received a financial benefit" from its conduct does not "entitle" Plaintiff to those revenues. *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1234 (N.D. Ill. 2005) (holding that plaintiff did not satisfy the second *HPI* requirement where he "failed to allege that he [was] entitled to the advertising fees paid to aQuantive or DirectRevenue, or to any increased revenues earned by AccuQuote"). Meta's ad revenues do not "rightfully belong" to Plaintiff, and she therefore cannot recover them from Meta. *Hollinger*, 2006 WL 3827326, at *4 (citation omitted).

**3. Better Claim.** Finally, as to *HPI*'s third requirement, Plaintiff does not allege that she has a "better claim" to her Nebula purchase and registration data. At the outset, her failure to plead an "entitlement" to Meta's ad revenues dooms her ability to satisfy this requirement. *Hollinger*, 2006 WL 3827326, at *3 ("Under each [*HPI*] scenario, the plaintiff may recover under the theory of unjust enrichment only if it can show that it—rather than the defendant—is entitled to the benefit."); *id.* at *4 ("The court cannot conclude that the Illinois Supreme Court intended to create a claim for unjust enrichment where a plaintiff claims damages that rightfully belong to a third party.") (quoting *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003)). In any event, Plaintiff cannot rely on the third *HPI* prong for two other reasons.

First, Plaintiff lacks a "better claim" to the value of data regarding her Nebula purchase and registration because she does not allege that it has intrinsic value; instead, her allegations establish that insofar as that data has value at all, Meta created that value. Plaintiff alleges that Meta makes money by selling ads and that its ability to do so depends on collecting data. Dkt. 1 ¶¶ 5, 41. But she does not allege that the data *itself* has value, such that Meta's retention thereof deprived her of any value in it. *See Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 853

(N.D. Ill. 2024) (holding that plaintiffs did not satisfy *HPI*'s third prong where defendant did not deprive plaintiffs of "intrinsic value" of their data); *cf. Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 846 (N.D. Ill. 2023) (holding that plaintiff was not harmed where she never "sought to monetize her own data" or alleged "that her ability to do so was diminished by [defendant's] practices"). Instead, Plaintiff alleges that Meta combines data regarding her website usage (in toto, not just on Nebula) with data regarding other persons' website usage and with Meta's own identity matching capabilities, advertising products, and userbase—the combination of which creates value for advertisers. Dkt. 1 ¶¶ 41, 46. Meta's efforts to create value for advertisers from the *totality* of that data forecloses any plausible argument that Plaintiff has a "better claim" to the value of the Nebula-specific data in question. *See Ramirez*, 729 F. Supp. 3d at 853 (*HPI*'s third requirement not satisfied where *defendant* created the data's value); *Annous v. Blaschek*, 2019 WL 9667844, at *10 (C.D. Ill. Mar. 26, 2019) (dismissing technology co-inventor's claim for proceeds of defendant's company sale that "Defendant earned" after "further develop[ing] the technology" and "profitably [selling] the corporation he created"), *aff'd*, 799 F. App'x 402 (7th Cir. 2020).

Second, as discussed above, Plaintiff assented to Nebula's and Meta's policies disclosing that Nebula may collect and share with Meta, and that Meta may receive, data about her activity on Nebula's website, including her order history, and that the data may be used for advertising. *See supra* at 9. She cannot now plausibly assert that she has a "better claim" than Meta to data that she *permitted* Meta to receive and use. *See Hatcher v. Hatcher*, 158 N.E.3d 326, 331 (Ill. App. 2020) (holding that plaintiffs lacked "better claim" than defendant to funds where funds were dispersed to defendant consistent with trustee's authority); *Plesnik v. Big Lots Stores, Inc.*, 2014 WL 2024966, at *3 (S.D. Ill. May 16, 2014) (dismissing unjust enrichment claim in part where plaintiff "allowed [defendant] the privilege" of using the property at issue).

* * *

Plaintiff's unjust enrichment claim against Meta should be dismissed for failure to satisfy any of *HPI*'s disjunctive requirements for pleading the claim's first element. And because Plaintiff cannot cure this defect, amendment would be futile and the claim should be dismissed with prejudice. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 940, 943-44 (7th Cir. 2012) (affirming dismissal with prejudice of initial complaint where amendment would be futile).

**C. Plaintiff Does Not Plead That Meta Retained A Benefit To Her Detriment**

Plaintiff's claim independently fails because she does not allege the claim's second element: "a detriment [to her], and a connection between that detriment and [Meta's] retention of a benefit." *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *7 (N.D. Ill. Mar. 30, 2022).

Plaintiff does not articulate what, if any, "detriment" she suffered that is connected to Meta's retention of data regarding her Nebula purchase and registration. Her conclusory allegation that Meta was unjustly enriched "to [her] detriment," Dkt. 1 ¶ 128, does not suffice. *See Ass'n Benefit Servs. v. Advanceps Holding Corp.*, 2004 WL 2101928, at *3 (N.D. Ill. Sep. 21, 2004) (dismissing claim where plaintiff alleged no detriment from a complained-of merger). Rather than plead a detriment to *her*, the Complaint focuses entirely on the purported benefit *Meta* receives from collecting information regarding users' off-Facebook activity. But without alleging a detriment to her from Meta's retention of that data, Plaintiff does not satisfy this element of her claim. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) (dismissing unjust enrichment claim based on defendant's "enormous economic benefit" where plaintiff failed to plead "facts specific to unjust enrichment of Defendant resulting from Plaintiff's information"); *see also Hogan*, 2022 WL 952763, at *8.

Nor does Plaintiff plead a detriment to her connected to Meta's retention of its own advertising revenues. At the outset, Plaintiff never alleges that Meta in fact ingested data in its ad

machinery with the result of her being served any ads. *E.g.*, Dkt. 1 ¶¶ 46, 131 (describing how Meta *could* use Pixel-generated information). But even if Meta used data to hone its ad targeting, this theory "bears no relationship to the loss *Plaintiff* allegedly suffered." *Paolino v. Hussain Egan Berdersky & Franczyk, L.L.C.*, 2006 WL 1980200, at *2 (N.D. Ill. July 11, 2006) (emphasis added). In *Hogan*, for example, the court dismissed an unjust enrichment claim premised on Amazon's collection of the plaintiffs' images, which they claimed Amazon used to improve facial recognition technology it later sold for a profit. 2022 WL 952763, at *8. The plaintiffs' alleged detriment was Amazon's privacy violation and use of their images to train its facial recognition software, which they claimed made the software more valuable. *Id.* This theory was dismissed as "too attenuated" because the plaintiffs failed to allege how "their *specific* images made [the software] more valuable or profitable to Amazon," which relied on a multitude of images—not just the plaintiffs'—to train the software. *Id.* (emphasis added). So too here. Plaintiff's theory that Meta profited from the use of data to improve its ad targeting functionality is non-specific to Nebula's sharing of data about her. Plaintiff's claim should be dismissed for failing to allege a connection between any detriment to her and Meta's ad proceeds.

### D. Plaintiff Does Not Allege That Meta's Retention Of A Benefit Is Inequitable

Plaintiff's claim independently fails because she does not allege the claim's third element: how Meta's retention of data regarding her purchase and registration or its advertising revenues "violates justice, equity, and good conscience." *Ass'n Benefit Servs.*, 2004 WL 2101928, at *3.

First, it is not inequitable for Meta to retain ad revenues it legitimately earned. Meta's ad revenues come from third parties who pay Meta to show their ads, and they are charged only for ads that are served. Just as Plaintiff neither is "entitled" to these revenues nor has a "better claim" to them, *see supra* at 11-12, she does not and cannot allege that Meta's retention of ad revenues it earned would be unjust. *See Ramirez*, 729 F.Supp.3d at 853; *Sotelo*, 384 F. Supp. 2d at 1234.

Second, to the extent Meta received any data about Plaintiff, it was because *Nebula* chose to send it to Meta, and it is not inequitable for Meta to retain it. Plaintiff concedes that Nebula, not Meta, chose to install the Pixel and program it to collect and share purchase and registration data. Dkt. 1 ¶¶ 45-48. Plaintiff's claims are based on Nebula's allegedly unlawful (under GIPA) disclosure of that data to Meta, but given Meta's policies, which *forbid* website owners from sending it sensitive data or data without a lawful right, Ex. 11 at 1, she does not and cannot allege that *Meta* is responsible for Nebula's actions. *See Aiello v. Invision Mktg. Sols.*, 2019 WL 1875354, at *2 (N.D. Ill. Apr. 26, 2019) (dismissing unjust enrichment claim where defendant was not at fault for third-party actions giving rise to the claim).

Third, Meta's retention of its ad revenues is not inequitable because Plaintiff expressly consented to Meta's receipt and use of the data in question. As explained above, Meta's disclosures make clear to Facebook users like Plaintiff that Meta may receive data through Meta Business Tools about their off-Facebook activities and that this data may be used to serve them ads. *See supra* at 2-4, 9-10. Meta's receipt of data regarding Plaintiff is not unjust given that she "allowed [Meta] the privilege" of receiving and using it. *Plesnik*, 2014 WL 2024966, at *3.

### E. Plaintiff's Claim Fails Under California Law As Well

For many of the same reasons explained above, and one more, Plaintiff's claim fails under California law. As in Illinois, California treats an unjust enrichment claim not as a standalone cause of action, but rather a "quasi-contract claim seeking restitution." *Rutherford Holdings*, 223 Cal. App. 4th at 231. Therefore, as explained in Section A, Plaintiff's claim fails because an unjust enrichment claim does not lie where, as here, an express contract governs the parties' relationship "covering the same subject matter" as the claim. *Lance Camper*, 44 Cal. App. 4th at 203.

Also similar to Illinois, California requires that a plaintiff allege "the receipt of a benefit and [the] unjust retention of the benefit at the [plaintiff's] expense," *Peterson*, 164 Cal. App. 4th

at 1593, which requires alleging "circumstances which make it inequitable for the defendant to retain the benefit without paying for its value," *Lebrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021) (internal quotation marks and citation omitted). But as explained in Sections B and D, Plaintiff does not allege any "actionable wrong" on Meta's part in *receiving* purchase and registration data from Nebula, such that Meta's retention thereof (or of Meta's ad receipts) would be inequitable. *Hill*, 195 Cal. App. 4th at 1307; *see also Doe I*, 2024 WL 3490744, at *10 (dismissing unjust enrichment claim based on Google's receipt of data through its pixel where "plaintiffs have not stated a claim against Google for any unlawful conduct"). Nor does Plaintiff plead that she has a "legal or equitable right" to the benefits she seeks to recover, as explained in Section B. *See Oakland*, 83 Cal. App. 5th at 479. And as explained in Section C, she fails to explain why Meta's retention of data about her or ad receipts is at her "expense." *Peterson*, 164 Cal. App. 4th at 1593; *cf. Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (finding no deprivation of value where plaintiffs never tried to monetize their data).

Plaintiff's claim also fails under California law because it is barred by the two-year statute of limitations. *Filet Menu, Inc. v. Cheng*, 71 Cal. App. 4th 1276, 1280 (1999) ("[A]ctions in quasi-contract are subject to a two-year statute of limitations"). Plaintiff filed this suit on October 10, 2024, meaning that any pre-October 10, 2022, claim is untimely. Plaintiff alleges that Nebula programmed Meta's Pixel to send Meta data when users (1) sign-up and register (she did so in March 2021) or (2) make a purchase (she did so in July 2021 and July 2022). Dkt. 1 ¶¶ 48, 50-51, 97, 99. Her claim is thus "hopelessly time-barred" because this data was sent before October 10, 2022. *See McNeil v. Salvation Army*, 754 F. App'x 469, 471 (7th Cir. 2019).

Thus, Plaintiff's unjust enrichment claim fails regardless of what law the Court applies.

## CONCLUSION

Plaintiff's claim against Meta should be dismissed with prejudice.

Dated: January 7, 2025

Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
Catherine A. Rizzoni (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
melanie.blunschi@lw.com
cat.rizzoni@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 7, 2025, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

Dated: January 7, 2025

s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc,

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com