**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 24-cv-09894<br><br>Hon. Jeffrey I. Cummings |

**MEMORANDUM IN SUPPORT OF
MICROSOFT CORPORATION'S MOTION TO DISMISS**

Raj N. Shah (ARDC #6244821)
Eric M. Roberts (ARDC #6306839)
Yan Grinblat (ARDC #6328805)
Zoe Levine (ARDC #6346013)
**DLA Piper LLP (US)**
444 W. Lake Street, Suite 900
Chicago, IL 60606
raj.shah@us.dlapiper.com
eric.roberts@us.dlapiper.com
yan.grinblat@us.dlapiper.com
zoe.levine@us.dlapiper.com

*Attorneys for Microsoft Corporation*

January 7, 2024

## Table of Contents

**Page**

I. Introduction ..... 1

II. Background ..... 3

A. Plaintiff alleges that she visited Nebula's website. ..... 3

B. Plaintiff alleges that Nebula's website uses Microsoft software. ..... 4

C. Plaintiff asserts a single claim against Microsoft for unjust enrichment. ..... 6

III. Legal Standard ..... 7

IV. Argument ..... 8

A. Plaintiff cannot state a standalone unjust enrichment claim against Microsoft. ..... 9

B. Plaintiff also fails to plead essential elements of unjust enrichment based on third-party conduct. ..... 11

C. Plaintiff does not plausibly allege that Microsoft was enriched by *her* information. ..... 14

V. Conclusion ..... 15

## Table of Authorities

**Page(s)**

**Cases**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ....................7

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (2005)....................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7, 15

*Bridges v. Blackstone Grp., Inc.*,
2022 WL 2643968 (S.D. Ill. July 8, 2022) ....................10

*Bridges v. Blackstone, Inc.*,
66 F.4th 687 (7th Cir. 2023) ....................9

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)....................7

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ....................7

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Comprehensive Care Corp.*, 864 F. Supp. 831 (N.D. Ill. 1994)....................9

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................14

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023).................... *passim*

*Dwyer v. Am. Express Co.*,
273 Ill. App. 3d 742 (1st Dist. 1995) ....................13

*Fin. Fiduciaries, LLC v. Gannett Co.*,
46 F.4th 654 (7th Cir. 2022) ....................7

*Gilmore v. City of Mattoon*,
2019 IL App (4th) 18077 ....................10

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022)....................15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989)....................8, 11

**Page(s)**

*In re Jepson*,
816 F.3d 942 (7th Cir. 2016) ....................14

*Kinney v. St. Paul Mercury Ins. Co.*,
458 N.E.2d 79 (Ill. App. Ct. 1983) ....................9

*Law Offs. of David Freydin, P.C. v. Chamara*,
24 F.4th 1122 (7th Cir. 2022) ....................7

*Letoski v. Coca-Cola Co.*,
2024 WL 4476120 (N.D. Ill. Oct. 11, 2024)....................8

*Martin v. Living Essentials, LLC*,
160 F. Supp. 3d 1042, 1047 ....................8

*McKnight v. United Airlines, Inc.*,
2024 WL 3426807 (N.D. Ill. July 16, 2024)....................10

*In re Mondelez Data Breach Litig.*,
2024 WL 2817489 (N.D. Ill. June 3, 2024) ....................12

*Patterson v. Respondus, Inc.*,
2022 WL 7100547 (N.D. Ill. Oct. 11, 2022)....................8

*Pennington v. Travelex Currency Servs., Inc.*,
114 F. Supp. 3d 697 (N.D. Ill. 2015) ....................8

*Ramirez v. LexisNexis Risk Sols.*,
2024 WL 1521448 (N.D. Ill. Apr. 8, 2024) .................... *passim*

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ....................13

*Slowinski v. BlueTriton Brands, Inc.*,
___ F. Supp. 3d ___, 2024 WL 3757097 (N.D. Ill. Aug. 9, 2024)....................8, 10

*Solar Micronics, Inc. v. Reddy*,
2023 WL 4564566 (N.D. Ill. July 17, 2023)....................2, 8, 9

*Sonrai Sys., LLC v. AMCS Grp. Inc.*,
2017 WL 4281122 (N.D. Ill. Sept. 27, 2017) ....................8

*Travelers Prop. Cas. Co. v. Benchmark Ins.*,
718 F. Supp. 3d 851 (N.D. Ill. 2024) ....................7

*Vill. of Rockton, IL v. Sonoco Prods. Co.*,
135 F. Supp. 3d 700 (N.D. Ill. 2015) ....................12, 15

**Page(s)**

*Zablocki v. Merchants Credit Guide Co.*,
968 F.3d 620 (7th Cir. 2020) ....................................................................................15

**Statutes**

410 ILCS 513/1, *et seq.* (Illinois Genetic Information Privacy Act) ................................... *passim*

410 ILCS 513/1.............................................................................................................10

410 ILCS 513/30(a) .....................................................................................................2, 9

410 ILCS 513/40.............................................................................................................2

410 ILCS 513/40(a) .....................................................................................................9, 10

**Other Authorities**

Microsoft Clarity Terms of Use
*available at* https://clarity.microsoft.com/terms ¶¶ 1(b)(ii), 4.1(f), 4.4(c)(ii) .......................2, 5

Microsoft UET Terms of Use
*available at* https://help.ads.microsoft.com/resources/microsoft_advertising_agreement/en.pdf § 9(b)-(c) ..............................................................................2, 5

Nebula Genomics Privacy Policy
*available at* https://nebula.org/blog/privacy-policy/.........................................................1, 10

## I. INTRODUCTION

Microsoft is not a proper defendant here because it is a stranger to any DNA testing Nebula allegedly did at Plaintiff's request, and Plaintiff does not allege any wrongdoing by Microsoft from which to assert a standalone unjust enrichment claim. Plaintiff alleges she visited Nebula's consumer-facing website, created a Nebula "account," bought a Nebula "membership," and took a Nebula genetic test and received the results. Compl. ¶¶ 97-98. She does not allege that she bought any genetic testing from Microsoft or that she has *any* relationship with Microsoft. Instead, she claims Nebula disclosed her genetic information to Microsoft without her consent because Nebula installed Microsoft "analytics and advertising software" on its website (and similar software from Meta and Google). In so arguing, Plaintiff ignores Nebula's privacy policy, which explains that Nebula may share "Personal Information" with "marketing and analytics service providers." *See* https://nebula.org/blog/privacy-policy/. And she jumps to the unsupported conclusion, based on speculative inferences and generic statements about targeted advertising, that Microsoft received and profited from her information. These allegations fail to state a claim against Microsoft.

The Microsoft software Plaintiff alleges Nebula used on its website are Universal Event Tracking ("UET") and Clarity. UET allows website owners to track certain user actions such as clicks on a particular link to improve their websites' effectiveness. *Id.* ¶¶ 53-54. Clarity tracks a "user's mouse movements and clicks" during a visit to a site to enable website operators to improve the user experience. *Id.* ¶ 67. Plaintiff concedes that Nebula—not Microsoft—installed UET and Clarity on its website, and that Nebula controls what the software tracks and sends to Microsoft. *See id.* ¶¶ 57-59, 71-72. Again, she ignores the publicly available UET and Clarity terms of use,[1] which explicitly prohibit users from sending "Sensitive [Personal] Data," including "genetic data,"

---

[1] The Complaint's omission of applicable privacy policies and terms of use raises questions about the investigation completed prior to filing. However, Plaintiff's failure to acknowledge the existence of these governing documents does not rescue the claims against Microsoft.

to Microsoft. https://help.ads.microsoft.com/resources/microsoft_advertising_agreement/en.pdf § 9(b)-(c); https://clarity.microsoft.com/terms ¶¶ 1(b)(ii), 4.1(f), 4.4(c)(ii). In any event, UET and Clarity data are deidentified, and Microsoft does not resell this data. *See* Grinblat Decl. Exs. 2, 3. Moreover, the software is both legal and ubiquitous, as many courts have recognized. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65-72 (W.D. Pa. 2023) (discussing Clarity).

With this action, Plaintiff seeks to join the trend of class actions under the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA"). She asserts that Nebula—not Microsoft—violated GIPA by disclosing her information to Microsoft, Meta, and Google without her consent, and that all three were unjustly enriched as a result. Plaintiff does not allege any plausible claim against Microsoft, and the Court should dismiss it with prejudice for three reasons:

*First*, under Illinois law, Plaintiff cannot assert a standalone unjust enrichment claim untethered from any underlying claim identifying wrongdoing by Microsoft. *See Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *5-6 (N.D. Ill. July 17, 2023) (Cummings, J.). Plaintiff asserts that Nebula disclosed genetic information to Microsoft, but GIPA does not supply a claim against Microsoft, the alleged recipient of that information. *See* 410 ILCS 513/30(a); 410 ILCS 513/40. Plaintiff may not use an unjust enrichment claim to expand statutory liability under GIPA beyond the legislature's intent. On this basis alone, the Court should dismiss the claim against Microsoft.

*Second*, Plaintiff fails to allege the essential elements of unjust enrichment "based on third-party behavior," which would require either a mistake by Nebula, unlawful conduct by Microsoft, or her superior right to Microsoft's alleged advertising revenues. *See Ramirez v. LexisNexis Risk Sols.*, 2024 WL 1521448, at *8 (N.D. Ill. Apr. 8, 2024). Plaintiff does not allege any mistake and falls far short of pleading Microsoft's misconduct or her right to Microsoft's revenues. Microsoft supplied software of general applicability to website owners, subject to terms of use. This software enabled owners like Nebula to better understand how users are using their sites and improve site

efficacy and user experience. Plaintiff does not, and cannot, allege that Microsoft improperly coerced Nebula to send it data. The Complaint also reflects that the data allegedly sent to Microsoft was associated with a random, alphanumeric code assigned to an internet browser, not with Plaintiff. *See* Compl. ¶¶ 54-55, 60-61, 74. Nebula's alleged transmission of de-identified, website-related actions that Plaintiff took on Nebula's site does not provide a claim against Microsoft.

*Third*, Plaintiff has not pleaded sufficient facts to show that Microsoft was enriched to her detriment. For example, she does not allege any ads that she saw, let alone supply well-pleaded facts connecting those ads to (1) her genetic information, (2) her use of the Nebula website, and (3) Microsoft (as opposed to Google or Meta). Plaintiff's reliance on generic statements about targeted advertising and speculation as to what could occur—which, again, are not based in any of the Microsoft documentation she cites throughout the Complaint—do not satisfy the *Iqbal*/*Twombly* pleading standard. *See Cook*, 689 F. Supp. 3d at 69 (dismissing claim involving Clarity software that "lack[ed] sufficient detail" regarding plaintiff's own experience).

## II. BACKGROUND

### A. Plaintiff alleges that she visited Nebula's website.

The claims in this case arise from Plaintiff's alleged interactions with Nebula—not Microsoft—which "owns and operates a platform for DNA testing and analysis, Nebula.org." Compl. ¶ 2. "To use" Nebula's "services, customers must first visit Nebula's website and order a DNA test or, if they have already taken a DNA test," "create an account and upload their DNA test results." *Id.* Customers "can then use" Nebula's "platform to perform analyses on their DNA and produce various reports derived from their genetic code." *Id.* Plaintiff contends that Nebula's services constitute "genetic testing" under Illinois law, and that Nebula possesses its customers' "genetic information." *See id.* ¶ 26.

Plaintiff alleges that she "created an account" with Nebula in March 2021 and "thereafter purchased and took a Nebula genetics test." *Id.* ¶ 97. She "requested" a "report" from Nebula regarding its "analysis of her genetic test." *Id.* ¶ 98. She also purchased "Nebula memberships" of unspecified duration in "July of 2021" and "July of 2022." *Id.* ¶ 99. She then "cancelled her membership." *Id.* While a member, she "accessed the Nebula app to review various information provided by Nebula." *Id.* ¶ 100. The Complaint, however, does not allege facts regarding the information Plaintiff received from Nebula, when or how she accessed such information, when she cancelled her membership, what she reviewed, or the form it took. *See id.* ¶¶ 97-105. Thus, although the Complaint refers to certain Nebula webpages (*e.g.*, the "Traits" or "Library" webpages, *id.* ¶¶ 60, 72-76) and includes several screenshots (*id.* ¶¶ 50-51, 60-61, 74-75, 88-89), nothing connects those allegations or screenshots to Plaintiff's visit to Nebula's website two or more years ago or the actual results of her genetic testing that she contends Nebula disclosed.

**B. Plaintiff alleges that Nebula's website uses Microsoft software.**

Plaintiff's claims do not arise from her interactions with Microsoft or information she provided to Microsoft. She does not allege that she signed up for a Microsoft service or paid Microsoft. Instead, and without acknowledging Nebula's privacy policy—which addresses with whom it shares "Personal Data"—she asserts that Nebula sent Plaintiff's genetic information to Microsoft through "analytics and advertising" software that Nebula "installed" on and "programmed" for Nebula's website. Compl. ¶ 32; *see id.* ¶¶ 127-34. The Complaint identifies the Microsoft software that Nebula used as UET and Clarity. *Id.* ¶¶ 53, 63.

UET allows website owners to track certain actions that users may take on their websites. *Id.* ¶¶ 53-54. The website owner defines the actions they want UET to track, such as measuring the number of visitors that click a particular link. *Id.*; *see also* Grinblat Decl. Ex. 1 ("First, *you* define the action you want to track . . . (for example, sign up for a newsletter).") (emphasis added).

Plaintiff alleges that Nebula—not Microsoft—programmed UET to track two actions on Nebula's website: (1) registering a kit, and (2) purchasing a kit. Compl. ¶¶ 60-61. Plaintiff believes that tracking the purchase and registration of a "kit" constitutes "genetic information." *See id.*

Clarity is free analytics software that measures user activity during a visit to the website. *Id.* ¶¶ 53-62, 63-65; Grinblat Decl. Ex. 2 ("Clarity is a free service forever."). Session replay technology like Clarity is widely used by website operators and app developers. *See Cook*, 689 F. Supp. 3d at 65-72 (collecting cases). As Plaintiff acknowledges, the software focuses on user activity, not site content: Clarity allegedly "capture[s]" a "user's mouse movements and clicks, scrolling, window resizing, [and] user inputs." Compl. ¶ 67. In fact, a document Plaintiff incorporated into the Complaint makes clear that "[t]he *website admin* controls the content sent to Clarity, and website owners should use their dashboard settings to block confidential content." Grinblat Decl. Ex. 2 (emphasis added). Plaintiff concedes that Nebula (not Microsoft) programmed Clarity for Nebula's website, including the "Traits" and "Library" pages. Compl. ¶ 72.

Microsoft builds numerous privacy safeguards into UET and Clarity. As a threshold matter, the UET and Clarity terms of use prohibit users—here Nebula—from sending any "Sensitive [Personal] Data," specifically including any "genetic data," to Microsoft in violation of any laws. *See* https://help.ads.microsoft.com/resources/microsoft_advertising_agreement/en.pdf § 9(b)-(c); https://clarity.microsoft.com/terms at ¶¶ 1(b)(ii), 4.1(f), 4.4(c)(ii). In addition, UET and Clarity do not track user identities, but rather use a random alphanumeric string that is assigned to the browser visiting the website—not the individual using this browser. *See* Compl. ¶¶ 54-55, 60-61, 74 (screenshots showing alphanumeric IDs); *see also* Grinblat Decl. Ex. 3 (UET uses "unique," "non-personally identifiable" or "anonymized" "IDs"). Plaintiff does not supply facts supporting her speculation that these alphanumeric strings "*can* be linked to an individual's identity," much less to her own identity. Compl. ¶¶ 56, 70 (emphasis added). Nor does she allege that Microsoft

attempted to identify her or sent her targeted advertising based on her genetic data. In fact, Microsoft "doesn't resell [UET] data to third parties or share it with other advertisers." Grinblat Decl. Ex. 3. Clarity also "doesn't sell data." Grinblat Decl. Ex. 2.

### C. Plaintiff asserts a single claim against Microsoft for unjust enrichment.

Count II of the Complaint lumps together Microsoft, Meta, and Google, and alleges they have been unjustly enriched because the "genetic information" they supposedly received from Nebula "enables [them] to enhance" the advertising "profile" each defendant purportedly maintains for Plaintiff, "allow[ing] [them] to promise even greater accuracy in targeting ads" and "enabling them to sell more ads for more money." Compl. ¶¶ 95-96, 131. Plaintiff claims that Microsoft "should be compelled to disgorge" the "proceeds [it] unjustly received from" Nebula's "disclosure of [her] genetic information." *Id.* ¶¶ 132-34.

However, the allegations regarding the "revenue" Microsoft theoretically *could* generate from targeted advertising are too speculative. First, Plaintiff does not allege Nebula was using UET or Clarity when she visited Nebula's website more than two years ago. *E.g.*, *id.* ¶¶ 57, 71 (Nebula installed UET and Clarity on "an unknown date"). Second, Plaintiff does not allege what genetic information she reviewed during her visits or what information regarding *Plaintiff* Nebula allegedly sent to Microsoft, much less facts showing how Microsoft could identify Plaintiff from that information. Third, Plaintiff does not—and cannot—allege that the screenshots in her Complaint are "advertising profiles," let alone *her* advertising profile. Fourth, Plaintiff does not identify any targeted advertisement that she alleges was based on genetic information Nebula sent to Microsoft. Plaintiff merely speculates that Microsoft *might* have a profile for her and hypothetically *could* use genetic information to "enhance" the profile. She stops short of pleading facts that such a thing occurred or warranting any plausible inference that Microsoft generated "revenue" by using *her* alleged genetic information to target ads to Plaintiff.

Nevertheless, Plaintiff seeks to certify a class of "[a]ll current and former Illinois residents who either obtained a DNA test from Nebula's website or who obtained an analysis from Nebula's website of a DNA test performed by another genetic testing provider, and whose genetic information was disclosed to Meta, Microsoft, or Google." *Id.* ¶ 106.

## III. LEGAL STANDARD

The Court should dismiss the Complaint against Microsoft because it fails to "state a claim to relief that is plausible on its face." *Travelers Prop. Cas. Co. v. Benchmark Ins.*, 718 F. Supp. 3d 851, 860 (N.D. Ill. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Iqbal* and *Twombly*, Plaintiff must plead facts, as opposed to speculation, legal conclusions, or "threadbare recitals" of the elements. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013); *see Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (requiring "specific facts").

While the Court must "accept[] as true all well-pleaded facts" and "draw[] reasonable inferences" in Plaintiff's favor, *Travelers*, 718 F. Supp. 3d at 860, the Court "is not required to don blinders" or "ignore commercial reality." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984). The Court also may consider documents referenced in a complaint and central to the claims.[2] *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). "This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine [her] case." *Id.*; *see Law Offs. of David Freydin, P.C. v.*

---

[2] The following webpages, attached as exhibits to the declaration of Yan Grinblat, are incorporated by reference into the Complaint and are properly before the Court on a motion to dismiss:

- **Exhibit 1** is a copy of the article on Microsoft's website "How does conversion tracking work?," which Plaintiff incorporates into and relies on in paragraph 53 of the Complaint.
- **Exhibit 2** is a copy of the Clarity "Frequently Asked Questions" webpage, which Plaintiff incorporates into and relies on in paragraphs 65 and 66 of the Complaint.
- **Exhibit 3** is a copy of the article on Microsoft's website "FAQ: Universal Event Tracking," which Plaintiff incorporates into and relies on in paragraphs 54 and 55 of the Complaint.
- **Exhibit 4** is a copy of the Clarity "Data Collection" page, which Plaintiff incorporates into and relies on in paragraph 67 of the Complaint.

*Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022) (plaintiff "cannot prevent" the court from "considering parts of" referenced documents "that doom her claim"). The doctrine applies to webpages relied on in the Complaint. *See Sonrai Sys., LLC v. AMCS Grp. Inc.*, 2017 WL 4281122, at *8 n.3 (N.D. Ill. Sept. 27, 2017); *Pennington v. Travelex Currency Servs., Inc.*, 114 F. Supp. 3d 697, 703 n.7 (N.D. Ill. 2015) (permitting reference to website). Similarly, the Court may take judicial notice of "facts contained on a defendant's website," *Patterson v. Respondus, Inc.*, 2022 WL 7100547, at *8, n.12 (N.D. Ill. Oct. 11, 2022); *see Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1047, n.5 (N.D. Ill. 2016), such as Nebula's privacy policy and the UET and Clarity terms of use.

## IV. ARGUMENT

"Illinois law does not permit a freestanding unjust enrichment claim." *Ramirez*, 2024 WL 1521448, at *8; *see Solar Micronics*, 2023 WL 4564566, at *5-6 (unjust enrichment not a separate cause of action). Instead, unjust enrichment is a "condition that may be brought about by unlawful or improper conduct." *Letoski v. Coca-Cola Co.*, 2024 WL 4476120, at *8 (N.D. Ill. Oct. 11, 2024) (dismissing claim for failure to plead unlawful or improper conduct); *see Slowinski v. BlueTriton Brands, Inc.*, ___ F. Supp. 3d ___, 2024 WL 3757097, at *16 (N.D. Ill. Aug. 9, 2024) (same). To recover "on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Plaintiff does not allege any unlawful or improper conduct by Microsoft that would warrant a remedy for unjust enrichment. First, there is no standalone claim for unjust enrichment, and Plaintiff cannot use unjust enrichment as a proxy for an unavailable GIPA claim against Microsoft. Second, Plaintiff fails to plead essential elements of an unjust enrichment claim where Microsoft

allegedly was a third-party recipient of data Nebula disclosed. Third, Plaintiff does not allege facts showing that Microsoft benefitted from her information to her detriment.

**A. Plaintiff cannot state a standalone unjust enrichment claim against Microsoft.**

Microsoft did nothing unlawful under GIPA or otherwise and the Complaint does not plead anything to the contrary. As an initial matter, Illinois law does not permit a plaintiff to bring a standalone unjust enrichment claim. *See Solar Micronics,* 2023 WL 4564566, at *6. In Illinois, "unjust enrichment is not a separate cause of action," but rather, "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence." *Id.* (collecting cases). Plaintiff does not attribute any unlawful or improper conduct to Microsoft, much less plead that Microsoft obtained her genetic information through fraud or duress. Without such allegations, she cannot state an unjust enrichment claim.

Separately, the Complaint impermissibly attempts to disguise a non-cognizable GIPA claim against Microsoft as an "unjust enrichment" claim. Under GIPA, "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test," except in certain circumstances. 410 ILCS 513/30(a). A person "aggrieved by a violation" of GIPA may bring "a right of action . . . against an offending party" to recover, among other remedies, liquidated or actual damages. 410 ILCS 513/40(a). However, GIPA does not impose liability on the party that allegedly *receives* such information. *See Bridges v. Blackstone, Inc.*, 66 F.4th 687, 690 (7th Cir. 2023) (affirming dismissal of claim against recipient). "Where the legislature has provided a remedy on a subject matter" courts should not "implement[] or expand[] the legislative remedy by judicial decree." *Kinney v. St. Paul Mercury Ins. Co.*, 458 N.E.2d 79, 81 (Ill. App. Ct. 1983); *see also Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Comprehensive Care Corp.*, 864 F. Supp. 831, 835 (N.D. Ill. 1994) ("judicially-crafted" claim for restitution dismissed).

Further, GIPA is an Illinois statute that regulates transactions in Illinois. *See* 410 ILCS 513/1. It does not have extraterritorial effect, *see McKnight v. United Airlines, Inc.*, 2024 WL 3426807, at *5 (N.D. Ill. July 16, 2024), and Plaintiff fails to allege any facts supporting extraterritorial application of GIPA to Microsoft, *see Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (2005) (finding that extraterritoriality doctrine barred certain consumer fraud claims).

There is simply no basis for a statutory claim against Microsoft, and so any derivative unjust enrichment theory is a "nonstarter." *Slowinski*, 2024 WL 3757097, at *16; *see also Gilmore v. City of Mattoon*, 2019 IL App (4th) 18077, ¶¶ 31-32 (no "derivative claim of unjust enrichment" where statute did not grant plaintiffs a right of action).

Plaintiff alleges she hired Nebula (a New York company) and willingly provided Nebula her genetic information. *See* Compl. ¶¶ 97-100. Assuming the information qualifies under GIPA, the legislature imposed the duty not to disclose the information on Nebula and provided a corresponding remedy against Nebula. *See* 410 ILCS 513/40(a); *see also Bridges v. Blackstone Grp., Inc.*, 2022 WL 2643968, at *2-3 (S.D. Ill. July 8, 2022) (noting the availability of a claim against the disclosing party). The legislature's choice to regulate the disclosing party and not the recipient tracks GIPA's purpose: Plaintiff alleges that Nebula—not Microsoft—knew what services it provided to Plaintiff, had contact with Plaintiff, and could have obtained any required consent. In fact, Nebula's privacy policy explains the "Personal Information" it may share with others, including "marketing and analytics service providers." *See* https://nebula.org/blog/privacy-policy/. GIPA does not supply a claim against Microsoft, a Washington company, for its alleged receipt of genetic information, and any attempt to plead a GIPA claim against Microsoft necessarily would fail. By extension, the derivative unjust enrichment claim Plaintiff attempts to bring against Microsoft also fails and should be dismissed with prejudice. *See Slowinski*, 2024 WL 3757097, at *16; *Gilmore*, 2019 IL App (4th) 18077, at ¶¶ 31-32.

### B. Plaintiff also fails to plead essential elements of unjust enrichment based on third-party conduct.

The unjust enrichment claim also fails because the Complaint merely parrots the elements—i.e., that Microsoft "retained" a "benefit" under "inequitable and unjust circumstances"—without the support of well-pleaded facts. Plaintiff does not seek "to recover proceeds given by" her to Microsoft; instead, she "seek[s] to recover a benefit that [allegedly] was provided to" Microsoft "by a third party." *Ramirez*, 2024 WL 1521448, at *8. To plead such a claim, Plaintiff "must show '(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.'" *Id.* at *8 (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989)). The Complaint fails to allege facts satisfying any of these conditions.

As to the first prong, the Complaint does not make any claim of "mistake." Such claims arise where, for example, a defendant inadvertently is paid for work that the plaintiff performed. *E.g.*, *HPI Health Care*, 545 N.E.2d at 679. Nothing similar is alleged here.

As to the second prong, the allegations do not establish "wrongful conduct" by Microsoft to procure information from Nebula. The UET and Clarity analytics software are not illegal to use in Illinois—nor does Plaintiff allege they are. *See Cook*, 689 F. Supp. 3d at 65-72 (discussing Clarity and other similar software). Plaintiff concedes that Microsoft's reference materials—including those incorporated into the Complaint—advise website developers on how UET and Clarity work, and that Nebula chose UET and Clarity based on its own business rationale.[3]

[3] *See, e.g.*, Compl. ¶ 53 (UET "collect[s] data from your website"), ¶ 65 ("Clarity is a user behavior analytics tool that helps you understand how users interact with your website"), ¶ 32 ("Nebula . . . has enabled analytics and advertising tools on its website."); *see also* Grinblat Decl. Exs. 3 & 4 (listing data potentially used by UET and Clarity).

Nebula—not Microsoft—"installed" UET and Clarity on Nebula's own website and "programmed" the software to track certain actions that Nebula specified. Compl. ¶ 32. And both UET and Clarity's terms expressly prohibited Nebula from sending any genetic data to Microsoft.

Any information that Nebula disclosed to Microsoft was "incidental to" services it received from Microsoft. *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *6 (N.D. Ill. June 3, 2024) (dismissing unjust enrichment claim against defendant that provided services to the company which allegedly stored plaintiff's data). In fact, the allegations and documents incorporated into the Complaint show that Microsoft instructed Nebula not to send confidential user information, provided a way to block such information, and received only what Nebula sent. *E.g.*, Grinblat Decl. Ex. 2. Under these circumstances, there is no plausible claim that Microsoft improperly sought out and procured Plaintiff's genetic information. *See Ramirez*, 2024 WL 1521448, *8-9 (dismissing unjust enrichment claim where plaintiff did not allege that defendant procured the information in violation of any statute or common law).

As to the third prong, the allegations do not establish that Plaintiff has a better claim to the "revenue" that Microsoft purportedly generated through unidentified, speculative advertising. *Contra* Compl. ¶¶ 132-34. As an initial matter, Plaintiff "cannot rely on [her] failed" alternative theories against Microsoft "to establish that" she has "a better claim to the value of [her] data than" Microsoft. *Ramirez*, 2024 WL 1521448, at *9.

Plaintiff also does not allege that Nebula wrongfully obtained information about her actions on its website, or that it deprived her of some valuable property interest by sending such data to Microsoft with an alphanumeric string of text associated with a browser (not Plaintiff's identity). *See Vill. of Rockton, IL v. Sonoco Prods. Co.*, 135 F. Supp. 3d 700, 711 (N.D. Ill. 2015) ("[T]here is no basis to believe that [defendant's] monetary profits should have been given to [plaintiff]; there are no allegations that [defendant] procured its profits from its customers by some type of

wrongful conduct."); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (rejecting claim based on alleged "property right" in allegedly "private information"). The alleged subsequent combination of that data with other information Microsoft may lawfully possess to "enhance [the] profiles" and "sell more ads for more money," Compl. ¶ 131, actually defeats Plaintiff's claim because the asserted increase in value of the data adds more speculation. *See Dwyer v. Am. Express Co.*, 273 Ill. App. 3d 742, 749 (1st Dist. 1995) (affirming dismissal where defendant "create[d] value by categorizing and aggregating" plaintiffs' information and did not "deprive" plaintiffs "of any value" of their information); *Ramirez*, 2024 WL 1521448, at *9 (applying *Dwyer* and dismissing unjust enrichment claim against data aggregator).

The court's recent dismissal of unjust enrichment claims in *Ramirez* is instructive. In *Ramirez*, the plaintiffs alleged that the defendant—the owner of "an online platform to" "collect," "aggregate," and sell "sensitive personal information about consumers"—was unjustly enriched because it impermissibly obtained, aggregated, and sold defendants' private information without their consent. 2024 WL 1521448, at *1. Under the third prong, the court found that the plaintiffs could not compel the defendant to disgorge "the profits" from selling their information. *Id.* at *8. First, the defendant's use of the plaintiffs' information did not "deprive the [plaintiffs] of any value of their information." *Id.* at *9. Second, the profits were not based on the "intrinsic value" of the data, but rather the value the defendant "create[d]" by "categorizing and aggregating" the data. *Id.*

Here, the same analysis holds, but the grounds for dismissal are even stronger because, unlike in *Ramirez*, Plaintiff does not allege that Microsoft is selling her personally identifiable information. Nor could she. As discussed above, the materials relied on in the Complaint show that Microsoft does not sell UET or Clarity data. *See* Grinblat Decl. Exs. 2, 3. Plaintiff's allegations thus affirmatively demonstrate that no unjust enrichment claim is possible because Microsoft did nothing unlawful justifying invocation of the Court's equitable powers.

### C. Plaintiff does not plausibly allege Microsoft was enriched by *her* information.

Beyond the generalized failure to plead the equitable grounds for restitution, the allegations are inadequate to sustain a claim against Microsoft based on *Plaintiff's* specific information. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (unjust enrichment requires plausible allegations that a defendant was enriched at the plaintiff's expense); *see In re Jepson*, 816 F.3d 942, 946 (7th Cir. 2016) (a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Plaintiff does not specify which of her genetic information she reviewed on the Nebula website (which, according to Plaintiff, would have been sent to Microsoft). She also does not allege she visited Nebula's site *after* UET or Clarity were implemented. Therefore, she does not support her rote allegation that Nebula sent Plaintiff's unspecified genetic information to Microsoft. *See* Compl. ¶¶ 57, 71. The Complaint primarily relies on screenshots to identify types of data that Microsoft allegedly receives, but Plaintiff does not plead that the data in those screenshots was associated with *her* genetic test. *See id.* ¶¶ 60-61, 74-75. Moreover, the screenshots show that UET and Clarity use random, alphanumeric strings, not Plaintiff's identifying information, and Plaintiff does not plausibly allege (nor could she) that Microsoft used data sent by Nebula to identify Plaintiff. These are fatal deficiencies. *See Cook*, 689 F. Supp. 3d at 69 (dismissing claim based on website's use of Clarity because the allegations "lack[ed] critical necessary details for the Court's analysis of the type of information allegedly captured by [Clarity]. What mouse movements? What did she hover over? What did she click? Which keystrokes did she enter? . . . All this information should be available to Ms. Cook; after all, she is the one who allegedly browsed [the] website.").

Further, Plaintiff does not plausibly allege that Microsoft used the data that Nebula transmitted to identify her. In fact, the allegations refute any such inference: the screenshots in the

Complaint show that UET and Clarity use random, alphanumeric strings associated with an internet browser. *See* Compl. ¶¶ 54-55, 60-61, 74. Nor can Plaintiff state a claim against Microsoft based on generalized assertions that Microsoft receives other people's genetic data. *See id.* ¶¶ 58-62, 63, 71-72, 77-79, 81. There simply are too many facts missing, requiring too much speculation to state a claim. *See Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *8 (N.D. Ill. Mar. 30, 2022) (dismissing claim that was "too attenuated" where plaintiffs failed to "allege that retention of [their] data specifically enriched Amazon").

Finally, Plaintiff does not plausibly allege that Microsoft increased the value of her advertising profile by including genetic information or derived any benefit from this increased value. For example, Plaintiff does not plead that Microsoft included any information it received from Nebula in her advertising profile. She does not contend that any advertiser paid Microsoft more money because Plaintiff's profile now included genetic information. And she does not allege seeing any specific advertisement based on her genetic data (a fact that would be within her knowledge and ability to plead). The Complaint merely speculates that Microsoft *could have* "enhanced" its profile of Plaintiff. *See, e.g.*, Compl. ¶¶ 7, 96, 131 (conclusory assertions that Plaintiff's profile was more valuable because Microsoft received her genetic data). This does not meet the plausibility threshold set out in *Iqbal*, 556 U.S. at 683 and *Twombly*, 550 U.S. at 570; *see Vill. of Rockton*, 135 F. Supp. 3d at 711 (dismissing conclusory unjust enrichment claim). Besides, the documents incorporated into the Complaint do not support Plaintiff's inferences. Rather, they state that Microsoft "doesn't resell" UET data, Grinblat Decl. Ex. 3, and "Clarity doesn't sell data," *id.* Ex. 2; *see Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020) (when allegations are contradicted by documents referenced in a complaint, the documents control).

## V. CONCLUSION

The claim against Microsoft should be dismissed with prejudice.

Dated: January 7, 2025

Respectfully submitted,

**Microsoft Corporation**

By: *_/s/ Raj N. Shah_*
One of its attorneys

Raj N. Shah (ARDC #6244821)
Eric M. Roberts (ARDC #6306839)
Yan Grinblat (ARDC #6328805)
Zoe Levine (ARDC #6346013)
**DLA Piper LLP (US)**
444 W. Lake Street, Suite 900
Chicago, IL 60606
raj.shah@us.dlapiper.com
eric.roberts@us.dlapiper.com
yan.grinblat@us.dlapiper.com
zoe.levine@us.dlapiper.com