**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 1:24-cv-09894-JIC<br><br>Hon. Jeffrey I. Cummings |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS META, MICROSOFT AND GOOGLE'S MOTIONS TO DISMISS**

Defendants Meta Platforms, Inc., Microsoft Corp., and Google LLC ("Moving Defendants") have each filed motions to dismiss (the "Motions," Dkts. 45, 48, and 51, respectively). Because the Motions raise many of the same arguments, Plaintiff hereby files this Consolidated Response to each.

## I. INTRODUCTION

Moving Defendants' primary argument that Plaintiff cannot bring an unjust enrichment claim as a standalone cause of action fails for the simple reason that it is not a standalone claim – the unjust enrichment claim is inextricably tied to the claim against Defendant Nebula for violation of the Illinois Genetic Information Privacy Act ("GIPA") which, for the reasons set forth in the concurrently-filed response to Nebula's Motion to Dismiss, is a valid cause of action. As Moving

Defendants' own cited cases recognize, an unjust enrichment claim can be based on the defendant's receipt of a benefit through a third party, and contrary to Moving Defendants' argument Plaintiff has adequately alleged the elements of such a claim.

Moreover, Meta's argument that the unjust enrichment claim is barred by the existence of its Terms fails because the Terms say nothing about Meta obtaining and using her genetic information to market its targeted ads to its customers.

Finally, the Complaint adequately alleges that Google is subject to the Court's personal jurisdiction because Google has purposefully availed itself of Illinois law by marketing the products described in the Complaint to web site operators that Google knows will be used by Illinois residents.

For these reasons, and those set forth more fully below, each of the Motions should be dismissed.

## II. BACKGROUND

For purposes of this motion to dismiss, the following factual allegations of the Complaint are taken as true. *See Beattie v. Emerald Expositions*, 2024 WL 4346634 n.1 (N.D. Ill. Sep. 30, 2024 (Cummings, J.) (citing *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022)).

Nebula is a commercial genetics company that offers genetic testing and analysis. Dkt. 1, ¶ 27. Nebula offers DNA tests, and also offers DNA analysis for customers who have taken a DNA test offered by another genetic testing company. Dkt. 1, ¶ 28. Nebula tells its customers and potential customers that its DNA analysis provides 50 times more information than the original raw data file from other DNA testing services, offering its customers personalized reports on hundreds of topics such as predisposition to disease, physical characteristics, and the impact of genetics on personality. Dkt. 1, ¶ 29. As Nebula itself acknowledges, genetic information can be

used for malicious ends by bad actors, such as authoritarian governments seeking to "discriminate against or prosecute groups of people." Dkt. 1, ¶ 31.

To protect the highly confidential genetic information of Illinois residents, in 1998 the Illinois Legislature enacted the Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1 *et seq.* In doing so, the Legislature recognized that "[t]he public health will be served by facilitating voluntary and *confidential* nondiscriminatory use of genetic testing information." 410 ILCS 513/5 (emphasis added). In short, GIPA simply says that the results of a DNA or genetic test – or whether an individual has taken a genetic test at all – is confidential, and that the person who had that test is the only one that is entitled to the results. No one else can even know that the individual has taken a genetic test without that person's knowledge or permission. Dkt. 1, ¶ 22.

To achieve this goal, GIPA proscribes any person from, among other things, disclosing genetic testing and information derived from genetic testing to any person other than the individual tested or to persons specifically authorized in writing in accordance with GIPA. *See* 410 ILCS 515/15(a). Furthermore, GIPA also makes it unlawful to disclose to a third party even the fact that an individual has undergone any genetic testing at all. 410 ILCS 513/30 (a).

Despite the clear requirements of GIPA, Nebula shares its customers' genetic information with third parties, specifically Defendants Meta, Google, and Microsoft. Dkt. 1, ¶ 32. Nebula does so because it has installed and enabled analytics and advertising tools on its website, specifically the Facebook Pixel, Microsoft Conversion Tracking, Microsoft Clarity, and Google Analytics and Tag Manager. *Id.* Each of these analytics tools uses "cookies" that are installed on the user's device, which track a website user's activities as she browses the website. Among the information provided to Meta, Google and Microsoft from Nebula's website via these cookies is Nebula users' genetic information. Specifically, as alleged in the Complaint:

*Facebook Pixel*

- Nebula programmed the Facebook pixel to collect and transmit to Meta information regarding consumers' purchases and registrations of genetic testing kits. Dkt. 1, ¶ 48.

- Nebula programmed its website to send this information to Meta along with the consumer's unique Facebook ID. Dkt. 1, ¶ 49.

- A consumer's unique Facebook ID can be used to identify the consumer, and accordingly constitutes personally identifiable information ("PII"). Dkt. 1, ¶35-36.

- Accordingly, for every Nebula user with Facebook accounts – *including Plaintiff* – Nebula has communicated to Meta that the user had undergone genetic testing, in violation of GIPA. Dkt. 1, ¶ 52.

*Microsoft Conversion Tracking*

- Nebula programmed Microsoft's Conversion Tracking to collect and transmit to Microsoft information regarding consumers' purchases and registrations of genetic testing kits. Dkt. 1, ¶ 58.

- Nebula programmed its website to send this information to Microsoft along with the consumer's unique Microsoft User ID ("MUID"). Dkt. 1, ¶ 59.

- A consumer's unique MUID can be used to identify the consumer, and accordingly constitutes PII. Dkt. 1, ¶¶ 55-56.

- Accordingly, for every Nebula user – *including Plaintiff* – who has visited Nebula.org's website and used its DNA analysis services, Nebula has communicated to Microsoft that the user has undergone genetic testing, in violation of GIPA. Dkt. 1, ¶ 62.

*Microsoft Clarity*

- Nebula programmed Microsoft Clarity to collect and transmit to Microsoft information regarding consumers' purchases and registrations of genetic testing kits as well as information regarding the specific results and analysis of their genetic tests. Dkt. 1, ¶ 72.

- Moreover every time a Nebula user generates a report on a disease, disorder, or physical or psychological attribute from Nebula's library, Nebula discloses that user's genetic information to Microsoft via the Microsoft Clarity tracker. Dkt. 1, ¶ 77.

- Nebula transmits this information to Microsoft with the consumer's unique MUID which, as set forth above, constitutes PII. Dkt. 1, ¶ 78.

- Accordingly, for every Nebula user – *including Plaintiff* – who has visited Nebula.org's website and used its DNA analysis services, Nebula has communicated to Microsoft via Microsoft Clarity that the user has undergone genetic testing, in violation of GIPA. Dkt. 1, ¶ 80.

- Similarly, for every Nebula user – *including Plaintiff* – who has viewed Nebula reports to assess their genetic predisposition to various diseases, disorders, or physical traits, Nebula has also shared such information with Microsoft via Microsoft Clarity in violation of GIPA. Dkt. 1, ¶ 81.

*Google Analytics and Tag Manager*

- Nebula also utilizes Google Tag Manager to share a user's genetic information with Google. Dkt. 1, ¶ 86.

- Tag Manager, like the Facebook pixel and Microsoft Conversion Tracking and Clarity, utilizes a unique Google ID to allow the company to "analyze the signed-in user experience, and understand user behavior across devices." Dkt. 1, ¶ 83.

- Accordingly, for every Nebula user – *including Plaintiff* – who has visited Nebula.org's website and used its DNA analysis services, Nebula has communicated to Google that the user has undergone genetic testing, in violation of GIPA. Dkt. 1, ¶ 90.

- Similarly, for every Nebula user – *including Plaintiff* – who has viewed Nebula reports to assess their genetic predisposition to various diseases, disorder, or physical traits, Nebula has also shared such information with Google in violation of GIPA. Dkt. 1, ¶ 91.

Plaintiff Portillo was a Nebula user from March of 2021 until her subscription expired in July of 2023. Dkt. 1, ¶¶ 97-99. During that time period, she requested a report on Nebula's analysis of her genetics test, and also regularly accessed the Nebula app to review various information provided by Nebula based on the results of her genetic test. Dkt. 1, ¶¶ 98 & 100. Via the processes described above, when Ms. Portillo obtained and reviewed Nebula's analysis of her genetic information, Nebula shared her genetic information with Meta, Microsoft and Google. Dkt. 1, ¶ 102. Such information included not only the fact that she had taken a genetic test, but also specific information regarding her genetic attributes. *Id.*

Ms. Portillo believed that the information she submitted to Nebula would be kept confidential, private, and secure. Dkt. 1, ¶ 103. Nebula never informed Ms. Portillo that her genetic information would be disclosed to anyone – let alone tech behemoths such as Meta, Microsoft and Google – when she obtained and viewed Nebula's analysis of her genetic data. Dkt. 1, ¶ 105. Mr. Portillo never consented, agreed, or gave permission – written or otherwise – to Nebula to disclose her genetic information to any third party. Dkt. 1, ¶ 105.

The Moving Defendants each take in billions of dollars annually from selling ads on their platforms, websites and search engines. Dkt. 1, ¶ 92. Google alone took in nearly a quarter *trillion* dollars in advertising revenue in 2023. *Id.* Meta's 2023 ad revenue was over $130 billion, accounting for approximately 97% of the company's total revenue. *Id.* Even Microsoft, a company far more well known for its software products, brought in over $12 billion in advertising revenue in 2023. *Id.*

In the past decade, digital ads (such as those sold by Meta, Google and Microsoft) have supplanted traditional television, radio and print advertising as the preferred choice for marketers looking to reach potential customers. Dkt. 1, ¶ 93. The explosion in digital advertising has been driven in large part by the advertiser's ability to target those consumers who are most likely to be interested in the specific product or service being advertised, as opposed to the overly broad audience targeted by traditional ads. Dkt. 1, ¶ 94. As Google explains to its advertising customers, "Online advertising offers granular audience information, so you can focus your efforts effectively. This means you can focus on customers nearby, in a specific city or state, or nationwide, or those who are searching for specific things." *Id.*

Meta, Google, and Microsoft are able to achieve this granularity of the target market by compiling vast amounts of data specific to every online consumer. Dkt. 1, ¶ 95. The core value

proposition to these Defendants' advertising customers is that the advertising customers will be able to direct their ad to a consumer who is exponentially more likely to have an interest in the offered product or service than a member of the general public. *Id.* While this level of granularity is valuable in its own right, it is especially so when the user's profile includes the "book of life" detailed by an individual's genetic information. Dkt. 1, ¶ 96. When a consumer's profile contains genetic information, Meta, Microsoft and Google's advertising customers can target consumers based on the most detailed, intimate, and unique information a person possesses. *Id.* Simply put, the inclusion of genetic information adds incredible value to the ads sold by Meta, Microsoft, and Google, and helps those Defendants achieve the astronomical ad revenue discussed above. *Id.*

## III. DISCUSSION

### A. Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

When ruling on a motion to dismiss for failure to state a claim, a court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sprint Spectrum, L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004). The Federal Rules do not require "detailed factual allegations," and a complaint needs only to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009). The pleading must describe the claim in enough detail to give the defendant notice of the claim and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), ciging *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The allegations need only plausibly suggest the possibility of a right to relief above the "speculative level." *Id.*

**B. The Unjust Enrichment Claim Against Moving Defendants is not a Standalone Claim**

Moving Defendants' primary argument is that the unjust enrichment claim fails because it is a "standalone claim." And indeed, each of the cases on which they rely involve dismissal of unjust enrichment claims after dismissal of the other claims upon which the unjust enrichment claims was based. *See, e.g., Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 853 (N.D. Ill. 2024) (dismissing unjust enrichment claim following dismissal of every other claim in the complaint); *Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023) (dismissal of unjust enrichment claim upon dismissal of claim upon which it was based); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (same); *Letoski v. Coca-Cola Co.*, 2024 WL 4476120, at *8 (N.D. Ill. Oct. 11, 2024) (allowing unjust enrichment claim to proceed because claim upon which it was based survived dismissal); *Slowinski v. BlueTriton Brands, Inc.*, __ F. Supp. 3d __, 2024 WL 3757097, at *16 (N.D. Ill. Aug. 9, 2024) (dismissal of unjust enrichment claim upon dismissal of claim upon which it was based); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324-25 (7th Cir. 2021) (same); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (same).

None of these cases involved a claim – albeit against a different party – that survived dismissal. And Plaintiff is aware of no case which expressly states that the cause of action upon which the unjust enrichment claim is based must be stated against the unjust enrichment defendant. Rather, returning to first principals, Illinois courts describe unjust enrichment as "a condition that may be brought about by unlawful or improper conduct as defined by law."

As Moving Defendants' own cited cases recognize, Illinois law does recognize a cognizable unjust enrichment claim where "the plaintiff is seeking recovery of a benefit that was

transferred to the defendant by a third party." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678 (Ill. 1989). That is precisely the scenario detailed in the Complaint, in which Plaintiff seeks recovery of the benefit (the value of her genetic information) that was transferred to the Moving Defendants by Nebula. Such a claim is valid under various scenarios, such as if "the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead … or the plaintiff … had a better claim to the benefit than the defendant." *Id.* at 679. Both of these bases are present here.

Moving Defendants' arguments against the "mistake" basis of the unjust enrichment claim misunderstand and mischaracterize Plaintiff's Complaint. Google, for example, argues that the "mistake" prong is not satisfied because Plaintiff "does not allege that Nebula or any of Google's advertisers intended to pay Plaintiff but mistakenly paid Google." Dkt. 52 at 12. This argument misconstrues Plaintiff's Complaint. Plaintiff is not alleging that Google's advertisers should have paid her; rather, she alleges that the benefit conferred on the Moving Defendants by Plaintiff (through Nebula) is her private genetic information. Plaintiff does not know whether Nebula provided this information to Moving Defendants by mistake, which is why Plaintiff has pled in the alternative that Nebula's conduct was reckless and/or negligent. Dkt. 1, ¶ 123. What Plaintiff does know is that the benefit – her genetic information – was supposed to be provided only to her, not to the third party Moving Defendants.

Meta's argument on this point similarly misses the mark, arguing that the Complaint alleges that that "Nebula *intentionally* installed the Meta Pixel to send Meta data about her." Dkt. 45 at 9 (emphasis in original). To be sure, Plaintiff alleges that Nebula intentionally installed the Meta pixel and other trackers discussed in the Complaint, and in so doing disclosed to Meta and the other Moving Defendants Plaintiff's genetic information in violation of GIPA. But as noted

above, whether Nebula's unlawful transmission of that data was intentional, reckless or negligent remains to be seen.

For its part, Microsoft argues only that Plaintiff does not make any claim of mistake. Dkt. 49, at 1. Again, this is simply wrong, because Plaintiff has alleged that Nebula's conduct was intentional and/or reckless, or in the alternative, negligent. Accordingly, Plaintiff has adequately alleged the *HPI* "mistake" basis for an unjust enrichment claim. For this reason alone, the Motions should be denied.

Plaintiff has also, however, adequately alleged an unjust enrichment claim under the *HPI* "better claim" basis. Meta's argument to the contrary is based on its dismissive mischaracterization of the "benefit" as Plaintiff's "Nebula purchase and registration data." Dkt. 45, at 13. As Plaintiff alleges, however, that data includes the information that Plaintiff has taken a genetic test, which the Illinois Legislature has seen to protect from disclosure under GIPA. 410 ILCS 513/30(a) (prohibiting disclosure of "the identity of any person up on whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test").[1] Moreover, GIPA's definition of "genetic information" includes a "request for, or receipt of, genetic services," and that "genetic services" is defined to include "(1) A genetic test; (2) Genetic counseling (including obtaining, interpreting, or assessing genetic information); or (3) Genetic education." 45 C.F.R. § 160.103.[2] In other words, Meta's glib suggestion that Plaintiff's genetic information has no value other than the value created by Meta in packaging it with other data it has gleaned from Plaintiff is refuted by the simple truth that the Illinois Legislature has deemed

[1] Meta does not appear to contest that Plaintiff has adequately alleged that her personally identifying information was transmitted along with her genetic information.
[2] By its terms, GIPA incorporates the HIPAA definitions set forth in 45 C.F.R. § 160.103. 410 ILCS 513/10.

that genetic information to have value that is worth protecting.[3] And it goes without saying that just because Meta is able to package Plaintiff's genetic information with other data to "add value" does not mean that Meta has a "better claim" to Plaintiff's most personal and private information.

Google makes similarly flawed arguments, asserting that Plaintiff's claim fails because she "does not allege that she ever intended to monetize her data, that she had any ability to monetize it, or that Google deprived her of any value." Dkt. 52, at 14. This argument misses the point of Plaintiff's Complaint (and GIPA) entirely. Genetic information does not have value because Plaintiff seeks to monetize it, it has value because it is inherently private information that technology companies should not be able to build into their user profiles to make their advertising more effective. Stated another way, genetic information has value in being protected, and in *not* being used for monetization purposes. Google and the other Moving Defendants have unjustly deprived Plaintiff of this benefit, and they should be obligated to disgorge their monetization of it.

Microsoft also attacks the "better claim" prong by wrongly focusing on the "benefit" conferred as being only confined to its monetization of Plaintiff's genetic information. Again, none of Microsoft's cited cases arise from legislatively-protected private information, much less from the monetization of Plaintiff's genetic information.

Finally, Moving Defendants' argument that they each have a "better claim" to Plaintiff's genetic information than does Plaintiff herself fails the logic test. As detailed in the Complaint, a person's genetic information is the most private and personal information an individual possesses. Dkt. 1, ¶¶ 16-20. No one – and certainly not the world's largest technology companies – has a better claim to that information than Plaintiff. For all of these reasons, Moving Defendants'

[3] The fact that the information disclosed was Plaintiff's genetic information, deemed worthy of protection by the Illinois Legislature, renders Meta's "intrinsic value" cases inapposite, as none of those cases involved the unlawful disclosure of genetic information.

arguments that the unjust enrichment claim fails because it is a "standalone claim" are without merit. Plaintiff has adequately alleged facts sufficient to support both the "mistake" and "better claim" bases set forth in *HPI*, and for this reason the Motions should be denied.

**C. Plaintiff has Adequately Alleged the Remaining Elements of Unjust Enrichment**

Each of the Moving Defendants also argues, without success, that Plaintiff has failed to adequately plead the elements of unjust enrichment. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI*, 545 N.E.2d at 679.

The Complaint's factual allegations plainly support these elements. First, the Complaint describes in great detail how Plaintiff's (and Class Members') genetic information is transmitted without their knowledge or consent, to the Moving Defendants. The Complaint also describes the benefit the disclosure of this information to Moving Defendants; namely, that "the inclusion of Plaintiff's and Class Members' genetic information in their profiles adds tremendous value to the ads sold by Meta, Microsoft, and Google, and confers a benefit on those Defendants by enabling them to sell more ads for more money." Dkt. 1, ¶ 131. Finally, the Complaint alleges that it would be unjust for Moving Defendants to retain any benefit conferred upon them by virtue of the unlawful disclosure of Plaintiff's genetic information. Dkt. 1, ¶ 132.

Each of the Moving Defendants nonetheless argues that Plaintiff does not allege what detriment she suffered that is connected to their retention of data of her genetic information. Dkt. 45, at 15; Dkt. 49, at 14-15; Dkt. 52, at 14-15. To the contrary, the Complaint specifically alleges that Plaintiff believed that her genetic information would be kept private, and not disclosed to any third party, much less tech behemoths such as Meta, Microsoft and Google. Dkt. 1, ¶¶ 103-04. Contrary to Moving Defendants' argument, the detriment to Plaintiff – disclosure of her most

private information to large technology companies – is directly connected to those very companies' retention and monetization of that data.

Moving Defendants' reliance on cases such as *Hogan v. Amazon, Inc.*, 2022 WL 952763, at *7 (N.D. Ill. Mar. 30, 2022) misses the point. In *Hogan*, the claim was dismissed because the plaintiffs did not allege how their specific facial images added value to the defendant's facial recognition training program. Here, in contrast, Plaintiff has alleged how, through its use of the Meta's c_user cookie, Microsoft MUID, and Google User ID, each Moving Defendant has specifically compiled data on Plaintiff and Class Members which is unique to each of them, enabling Moving Defendants to market their targeted advertising to their customers.

Accordingly, Plaintiff has adequately alleged each of the elements of unjust enrichment, and the Motions should be denied.

**D. The Unjust Enrichment Claim is not Barred by Meta's Terms**

Meta's "express contract" argument is doomed by the same fatal error as in its arguments as to the elements of the unjust enrichment claim: its failure to acknowledge that the benefit conferred in this case consists of Plaintiff's genetic information. Indeed, Meta continues to mischaracterize this highly personal information as "purchase and registration data," failing to acknowledge that the Illinois Legislature has explicitly deemed such data to be genetic information not to be shared with any third party.

Meta's extensive quotes of its Terms refute, rather than support its argument. Not once in its Terms does Meta state or even suggest that the data that it uses to target its ads might include unlawfully collected genetic information. To the contrary, as Meta itself admits, it purportedly "prohibited websites like Nebula from sending it protected data." Dkt. 45, at 11. In other words, Meta argues on the one hand that its users willingly agree to the use of their "protected data," while

on the other hand it insulates its users from its use of their "protected data" by imposing plainly inadequate controls on its partners such as Nebula.

All this is to show that contrary to Meta's argument, its Terms do not cover the "subject matter" of Plaintiffs' claim. To the contrary, they merely provide that businesses like Nebula will collect unspecified information. They do not disclose that the information disclosed will include information that Nebula is prohibited both by Illinois law and (apparently) Meta's own policies from disclosing to Meta. Accordingly, Meta's "express contract" argument fails on its terms.

**E. Google is Subject to this Court's Personal Jurisdiction**

Unlike the other Moving Defendants, Google seeks dismissal for lack of personal jurisdiction, arguing (apparently with a straight face) that it has not purposefully availed itself of the protection of Illinois laws and that hailing it into an Illinois court would offend traditional notions of fair play and substantial justice. Google's products and services are used ubiquitously throughout the United States and the world. By market capitalization, its parent company is among the top 5 largest companies in the country.[4] The products relevant to this case – Google Analytics and Tag Manager – are by its own admission "the go-to platform for millions of website and app owners seeking to gain a deeper understanding of their website and app performance." Dkt. 1, ¶ 82. Simply put, the notion that Google could not have "reasonably anticipated" that it would be hauled into Court in Illinois based upon a website operator's use of its analytics tools that collect information from Illinois residents is risible.

Google's reference to the various contractual agreements with website operators such as Nebula, calling for resolution of disputes in California, have no bearing on this conclusion. This

[4] https://en.wikipedia.org/wiki/List_of_public_corporations_by_market_capitalization (last viewed Feb. 13, 2025).

is not a dispute between Google and Nebula. This is a dispute between an Illinois resident who used a website that (like "millions" of others) had installed Tag Manager and Google Analytics.

Google argues nonetheless – again, apparently with a straight face – that its "marketing activities" are not "targeted at Plaintiff or other Illinois residents specifically." Dkt. 52, at 8. As to Plaintiff, this may be true specifically as to Google Analytics and Tag Manager, because Plaintiff is not a website or app operator. But Google – again, by its own admission – does market to "millions" of website and app operators. Some, presumably, are located in Illinois, but that's not the point. The question is whether Google could expect to be hauled into court in Illinois based upon an Illinois resident's use of the website or app of one of the "millions" that have installed Google Analytics and Tag Manager. The answer is unequivocally yes.

Google's argument essentially boils down to, "We market to the entire world, not Illinois specifically. So how could we expect to be sued in Illinois?" To state this proposition is to demonstrate its absurdity. And courts have recognized that companies engaged in nationwide marketing are subject to being hailed into court throughout the country. *See, e.g., uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *Dzananovic v. Bumble, Inc.*, 2023 WL 4405833 (July 7,2023). For these reasons, Google's motion to dismiss for lack of personal jurisdiction should be denied.

## IV. CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that the Court deny Moving Defendants' motions to dismiss in their entirety, and award Plaintiff such other and further relief the Court deems just and proper. While the foregoing demonstrates that Plaintiff has adequately pled her claim for unjust enrichment against Moving Defendants, Plaintiff further requests, in the event the Court deems Plaintiff's factual allegations insufficient, leave to amend the Complaint to remedy any defects noted by the Court.

Respectfully submitted,

Dated: February 13, 2025

*/s/Thomas M. Hanson*

Jon Loevy jon@loevy.com
Mike Kanovitz mike@loevy.com
Tom Hanson hanson@loevy.com
Loevy & Loevy
311 N. Aberdeen St., 3 rd Floor
Chicago IL 60607
312.243.5900

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Thomas M. Hanson, hereby certify that the above document was filed on February 13, 2025 with this Court through the CM/ECF system which hereby effected service on all counsel of record.