IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals, ) ) ) ) | |
| Plaintiff, ) ) | No. 24-cv-9894 |
| v. ) ) | Judge Jeffrey I. Cummings |
| NEBULA GENOMICS, INC., META PLATFORMS, INC., MICROSOFT CORPORATION, and GOOGLE LLC, ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antoinette Portillo purchased a genetic test offered by defendant Nebula Genomics, Inc. ("Nebula"), then used Nebula's platform to perform analyses on her DNA and produce reports derived from her genetic code.  Unbeknownst to her, however, each time she obtained and reviewed her results, Nebula would in turn disclose—without her consent—that she had taken a genetic test, as well as other unique information about her genetic attributes, to defendants Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Microsoft Corporation ("Microsoft"), (collectively the "Tech Defendants").

Plaintiff seeks to represent a putative class and bring claims against Nebula for violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/15 and 513/30, ("GIPA"), which regulates the use of genetic information and genetic testing results of individuals.  Plaintiff further alleges that the Tech Defendants have been unjustly enriched by using the personal genetic information that they obtained from Nebula to sell targeted advertisements to their customers.

Before the Court are: (1) Nebula's motion to transfer plaintiff's GIPA claim against it to the District of Massachusetts pursuant to 28 U.S.C. §1404, or in the alternative, to dismiss plaintiff's GIPA claim pursuant to Federal Rule 12(b)(6); (2) the Tech Defendants' respective motions to dismiss the unjust enrichment claim asserted against them under Rule 12(b)(6); and (3) Google's additional motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

For the reasons set forth below, Meta's motion to dismiss, (Dckt. #45), and Microsoft's motion to dismiss, (Dckt. #48), are granted. The portion of Google's motion to dismiss, (Dckt. #51), that seeks dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction is granted and the remainder of the motion is denied as moot. Nebula's motion to transfer, or in the alternative, to dismiss, (Dckt. #54), is granted as to the request to transfer, and denied as to the request to dismiss on the ground of mootness.

## I. FACTUAL BACKGROUND

The Court draws the facts set forth below from the facts pleaded in plaintiff's complaint, (Dckt. #1), as well as from affidavits and other relevant documents presented to this Court so long as those facts are undisputed. *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F.Supp. 657 (N.D.Ill. 1983) ("In ruling upon a motion to transfer under 28 U.S.C. §1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents.").

### A. The Parties.

Plaintiff, Antoinette Portillo, is a resident of Chicago, Illinois. (Dckt. #1 ¶8). Defendant Nebula is a commercial genetics company that offers genetic testing and analysis. (*Id*. ¶¶27–28). Nebula provides its customers with personalized reports which enable them to determine, among

other things, whether their DNA predisposes them to certain diseases, causes certain physical characteristics, or affects their personality and income. (*Id.* ¶29). The Tech Defendants are technology companies that develop and operate certain business analytics tools including Meta Pixel; Google Analytics and Google Tag Manager; and Microsoft Conversion Tracking and Microsoft Clarity. (*Id*. ¶¶4, 10–12).

### B.      Plaintiff's Account with Nebula.

Plaintiff created an account on Nebula.org in March 2021 and thereafter purchased a Nebula genetics test, took the test, and requested the results. (*Id.* ¶98). By registering for an account and using Nebula's website, plaintiff acknowledged that she had "read and agree[d] to both Nebula's Terms of Use and Nebula's Privacy Policy." (Dckt. ##54-2 to 54-7). Relevant here, the Terms of Use contained the following clause:

> Governing Law. This Agreement shall be construed according to the laws of the State of Massachusetts. Venue for any dispute shall lie in Suffolk County, Massachusetts.

(*Id.*). Also relevant here, Nebula's Privacy Policy stated, "[w]e work with other companies to provide our Services. In turn, we share information with these third-party services providers as necessary for them to provide their services to us and help us perform our contract with you." (Dckt. #47-13 at 5).

Although plaintiff ultimately cancelled her Nebula membership, (Dckt. #1 ¶99), she regularly used the Nebula app to review various information provided by Nebula based on the results of her genetic test during the time her account was active, (*id.* ¶100).

### C.      The Data that Nebula Provides to the Tech Defendants.

Nebula utilizes analytics and advertising tools on its website, namely, Meta Pixel, Google Analytics, Google Tag Manager, Microsoft Conversion Tracking, and Microsoft Clarity (the

3

"Analytics Tools"). (*Id.* ¶32). These Analytics Tools can collect and transmit information to the Tech Defendants about the online conduct of consumers, such as whether a website user places a certain item in their shopping cart, how their mouse moves, and what links they click. (*Id.* ¶¶41, 48, 58, 63, 84, 86).

According to plaintiff, when she obtained and reviewed the results of her genetic testing on Nebula's app, Nebula, shared her genetic information with the Tech Defendants via the Analytics Tools. This information included not only the fact that she had taken a genetic test, but also specific information regarding her genetic attributes. (*Id.* ¶¶32, 102).

### D. The Tech Defendants' Alleged Use of Genetic Data.

The Tech Defendants sell targeted advertisements directed to a unique internet user based upon a profile that the company has compiled on that user. (*Id.* ¶5). The Tech Defendants benefit from the collection of genetic data, according to plaintiff, because that data enhances the profile each company has compiled as to plaintiff (or a class member), thereby making the companies' targeted ads more valuable to their customers. (*Id.* ¶7).

## II.    ANALYSIS

### A.    Transfer of Plaintiff's GIPA Claim to the District of Massachusetts is Proper Under 28 U.S.C. §1404.

Nebula seeks to transfer plaintiff's GIPA claim against it to the District of Massachusetts pursuant to the forum selection clause contained in Nebula's Terms of Use. Plaintiff and Nebula agree that the relevant provision in the Terms of Use is as follows:

> Governing Law. This Agreement shall be construed according to the laws of the State of Massachusetts. Venue for any dispute shall lie in Suffolk County, Massachusetts.

(Dckt. ##54-2 to 54-7).

A forum selection clause requiring a suit to be filed in a specific federal forum may be enforced through a motion to transfer under Section 1404(a). *Atl. Marine Constr. Co., Inc. v. U.S. District Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Pursuant to Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district [court] or division where it might have been brought." 28 U.S.C. §1404(a). "When a defendant files such a motion . . ., a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co., Inc*, 571 U.S. at 52. Moreover, Section 1404(a) "requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60, *quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988).

1. **Nebula's GIPA Claim Relates to the Terms of Use.**

Plaintiff argues that her GIPA claim should not be transferred for two reasons: (1) because the forum selection clause is limited to disputes related to the Terms of Use, and her GIPA claim—a statutory claim—falls outside its scope; and (2) even if her claim is subject to the forum selection clause, transfer pursuant to the clause is permissive, not mandatory. The Court disagrees with both arguments.

To begin, plaintiff cites no authority for her assertion that her GIPA claim does not relate to the Terms of Use merely because it is a statutory claim rather than a contractual one. On the other hand, courts routinely find that "statutory claims may 'relate to' a contract and fall within the scope of a forum selection clause, even if the complaint contains no explicit contract claims." *Bagg v. HighBeam Research, Inc.*, 862 F.Supp.2d 41, 45 (D.Mass. 2012) (cleaned up); *see also Huffington v. T.C. Group*, LLC, 637 F.3d 18, 22 (1st Cir. 2011) (affirming dismissal of statutory

5

claims because they fell within the scope of a forum selection clause even though the complaint contained no contract claims); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (affirming district court's ruling that trademark claims fall within scope of forum selection clause in distribution agreement); *Prof'l LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14-cv-2440, 2014 WL 6613012, at *6 (N.D.Ill. Nov. 21, 2014) ("Courts construe forum selection clauses broadly. Indeed, they can cover claims in addition to a breach of the contract in which they are contained.").[1]

Furthermore, it is clear that plaintiff's GIPA claim relates to the Terms of Use, even though it is a statutory claim. Plaintiff could not have accessed Nebula's services, and thus would not have *any* cause of action against Nebula, without entering into the Terms of Use. *See Bagg*, 862 F.Supp.2d at 46 (finding a forum selection clause contained in a "clickwrap agreement" on the defendant's website—which the plaintiffs were required to agree to in order to access the defendant's services—applied to the plaintiffs' statutory claims).

Moreover, by using Nebula's services, plaintiff acknowledged that she had read and agreed to Nebula's Privacy Policy, which explains that Nebula shares information with "third-party services providers" so that they can provide services to Nebula which in turn helps Nebula perform its contracts with its customers. (Dckt. #47-13 at 5). Plaintiff's claims relate to the provision of information under the Privacy Policy and therefore relate to the Terms of Use. *Mishiyev v. Youtube, LLC*, Case No. 8:24-cv-2675-MSS-TGW, 2024 WL 4932773, at *2 (M.D.Fla. Dec. 2, 2024) (plaintiff was subject to venue clause in YouTube's Terms of Service on

---

[1] Nebula argues that Massachusetts law applies based on the Governing Law clause of the Terms of Use. (Dckt. #69 at 7–8). Plaintiff does not directly dispute Nebula's position. Instead, she relies on Illinois law in her opposition. Nonetheless, because both Illinois and Massachusetts federal courts employ the same principles when construing forum selection clauses, the Court can decide the present case without conducting a choice of law analysis since the result reached will be the same regardless of which state's law governs.

his claims related to the removal of his videos where the Terms of Service expressly incorporated YouTube's Community Guidelines and YouTube's Policy, Safety, and Copyright Policies, which prohibited users from uploading content that infringes the copyrights or other intellectual property rights of others). For these reasons, the Court finds that plaintiff's GIPA claim falls within the scope of the forum selection clause.

### 2. The Forum Selection Clause is Mandatory.

Plaintiff next argues that even if her claims are subject to the forum selection clause, the clause is permissive, rather than mandatory, because it does not state that venue shall lie "exclusively," "solely," or "only" in Massachusetts. (Dckt. #65 at 7). Plaintiff cites no persuasive authority in support of this argument, therefore the Court disagrees. Courts from around the country have found the use of the word "shall" is sufficient to construe a forum selection clause as mandatory (or exclusive). *See*, *e.g.*, *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) ("Jurisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas" was mandatory language); *Home Prods. Int'l-N. Am., Inc. v. PeopleSoft USA, Inc.*, 201 F.R.D. 42, 46 (D.Mass. 2001) ("venue shall lie" implies exclusivity); *see also Giammattei v. Bertram Yacht, Inc.*, No. 3:9 CV 399, 2010 WL 2593612, at *5–6 (W.D.N.C. June 23, 2010) (forum selection clause language "venue for any dispute shall lie in Miami-Dade County, Florida" "should be construed as mandatory"). Accordingly, the Court finds that the Terms of Use's requirement that the "[v]enue for any dispute shall lie in Suffolk County, Massachusetts" requires it to construe the forum selection clause as being mandatory.

In sum: The Court finds that plaintiff's GIPA claim falls within the forum selection clause in the Terms of Use, and that the forum selection clause is mandatory, such that plaintiff's GIPA claim must be transferred to the District of Massachusetts pursuant to 28 U.S.C. §1404(a).

### B.  This Court Does Not Have Personal Jurisdiction Over Google.

Google moves to dismiss plaintiff's unjust enrichment claim against it pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

A plaintiff may demonstrate personal jurisdiction over a defendant through either general or specific jurisdiction. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (cleaned up). Plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). To determine whether plaintiff has met her burden, this Court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

It is not clear which type of personal jurisdiction—general or specific— plaintiff believes this court has over Google, thus the Court addresses both and starts with general jurisdiction.

#### 1.  This Court Lacks General Jurisdiction Over Google.

"There are two 'exemplar bases' where an organization is 'essentially at home' for general-jurisdiction purposes: its state of incorporation and principal place of business."

*Tagliere v. Horseshoe Hammond, LLC*, No. 22 C 6176, 2023 WL 3886135, at *2 (N.D.Ill. June 8, 2023), *quoting Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 968 (7th Cir. 2015) ("[T]he Court has identified only two places where [an organization is 'essentially at home']: the state of the corporation's principal place of business and the state of its incorporation."). Neither basis applies here—Google is a Delaware limited liability company, with its principal place of business in Mountain View, California. (Dckt. #1, ¶12; Dckt. #54-1 ¶¶4–5).

### 2. This Court Lacks Specific Jurisdiction Over Google.

The Court next considers whether it may exercise specific jurisdiction over Google. In order to do so, three essential requirements must be met. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022). First, Google's "contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Id.*, *quoting Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020). Second, "the plaintiff's alleged injury must have arisen out of [Google's] forum-related activities." *Id.*, *quoting Curry*, 949 F.3d at 398. And third, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.*, *quoting Curry*, 949 F.3d at 398. "For a State to exercise jurisdiction consistent with due process, [Google's] *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801, *quoting Walden v. Fiore*, 571 U.S. 277, 284 (2014). The relationship between [Google] and the forum state must also "arise out of contacts that the defendant *[it]self* creates with the forum . . . ." *Id.* (cleaned up).

In her response to Google's motion to dismiss, plaintiff points to her allegation that Google Analytics is "the go-to platform for millions of website and app owners seeking to gain a deeper understanding of their website and app performance," (Dckt. #66 at 14 (citing Dckt. #1 ¶82)), and argues that because Google's products and services are used ubiquitously throughout the United States and the world," it could reasonably anticipate being hauled into court in Illinois. (Dckt. #66 at 14–15). But even accepting both plaintiff's allegation about Google's popularity and her unpled assertion that it is "ubiquitous," as true, specific personal jurisdiction is still lacking because plaintiff has not alleged that Google engaged in any *suit-related* conduct in Illinois that is connected to her claim.

Plaintiff's unjust enrichment claim—which is the only claim alleged against Google—is premised on her allegations that nonresident Nebula[2] collected her genetic information before disclosing that information to nonresident Google. (Dckt. #1 ¶¶9, 12, 89–91). While plaintiff herself was located in Illinois, nowhere does plaintiff allege that any of *Google's* suit-related conduct—receipt of her data or creation of her "profile"—occurred in Illinois. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, 488 F.Supp.3d 714, 721–22 (S.D.Ill. 2020) (concluding specific personal jurisdiction was lacking where plaintiff did not allege that the vendor-defendant's conduct occurred in Illinois). The fact that plaintiff accessed *Nebula's* services from Illinois is insufficient to confer specific personal jurisdiction over Google as a nonresident defendant. *Walden*, 571 U.S. at 285 ("the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

---

[2] As pled, Nebula is a corporation organized and existing under Delaware laws, with its principal place of business in New York. (Dckt. #1 ¶9).

Plaintiff further argues, relying on the Seventh Circuit's decision in *uBID*, that Google's nationwide marketing activities are sufficient to confer jurisdiction in Illinois. (Dckt. #66 at 15 (citing *uBID*, 623 F.3d at 425)). The Court disagrees and finds that *uBid* is factually distinguishable. Nonetheless, its reasoning is instructive.

In *uBID*, the defendant, GoDaddy—which offers website registration services—had "imprinted itself on the national consumer consciousness" through a national advertising campaign that included television advertisements and advertisements at the Chicago Cubs and the Chicago White Sox ballparks. *Id.* at 424. The national advertising campaign had "paid dividends" for GoDaddy, and it had hundreds of thousands of Illinois customers. *Id.* The plaintiff in *uBID* sued GoDaddy in Illinois for permitting its customers to engage in "cybersquatting," and GoDaddy moved to dismiss for lack of personal jurisdiction. *Id.* at 424–25. On appeal, the Seventh Circuit reversed the trial court and concluded that Illinois courts exercising specific jurisdiction over GoDaddy was proper in part because GoDaddy had "thoroughly, deliberately, and successfully exploited the Illinois market." *Id.* at 427. The Court emphasized that GoDaddy had engaged in an extensive national advertising campaign which had successfully reached Illinois customers, and those customers had sent "many millions of dollars to [GoDaddy] each year." *Id.*

No similar allegations or evidence has been offered by plaintiff here. Unlike in *uBID*, here, plaintiff alleges only that Google "touts" Google Analytics as "the go-to platform for millions of website and app owners seeking to gain a deeper understanding of their website and app performance." (Dckt. #1 ¶82). There are no allegations or other evidence of Google's marketing efforts in Illinois, the number of customers it has in Illinois as a result of those efforts, or resulting profits in Illinois. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)

11

(distinguishing *uBID* and finding no personal jurisdiction where the record did not show that defendant deliberately targeted or exploited the Illinois market).

Accordingly, the Court finds on this record that it has neither general nor specific jurisdiction over Google, and it therefore grants Google's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

### C. Plaintiff's Standalone Claim Against the Tech Defendants for Unjust Enrichment Fails.

Because the Court has found that plaintiff's GIPA claim against Nebula must be transferred and that it lacks personal jurisdiction over Google, all that remains is plaintiff's unjust enrichment claim against Meta and Microsoft.

As the Seventh Circuit has stated on numerous occasions—and Meta and Microsoft argue—"there is no stand-alone claim for unjust enrichment" under Illinois law. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Rather, a claim for unjust enrichment typically depends upon underlying allegations of unlawful or improper conduct, and thus it is "tied to the fate" of those underlying allegations. *Fares v. Char-Broil, LLC*, No. 24 C 4878, 2025 WL 1191729, at *7 (N.D.Ill. Apr. 24, 2025) (citing *Benson*, 944 F.3d at 648 (cleaned up)).

Plaintiff argues that her unjust enrichment claim is not subject to dismissal because her GIPA claim is otherwise properly before the Court. In other words, plaintiff acknowledges that her unjust enrichment claim is tied to her GIPA claim. But, for the reasons stated above,

plaintiff's statutory claim must be transferred to the District of Massachusetts, therefore her remaining claim before this Court—a standalone unjust enrichment claim—must be dismissed.[3]

## CONCLUSION

For the reasons stated above, defendant Nebula Genomics, Inc.'s motion to transfer, or in the alternative, to dismiss, (Dckt. #54), is granted as to the motion to transfer, and denied as to the request to dismiss on grounds of mootness. Defendant Meta Platform, Inc.'s motion to dismiss, (Dckt. #45), and defendant Microsoft Corporation's motion to dismiss, (Dckt. #48), are granted and plaintiff's unjust enrichment claims against them are dismissed without prejudice to the refiling of the claims in the District of Massachusetts. Finally, the portion of defendant Google LLC's motion to dismiss, (Dckt. #51), premised on Rule 12(b)(2) for lack of personal jurisdiction is granted and the remainder of the motion is denied as moot.

**DATE:**     **July 24, 2025**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**

---

[3] Even if this Court had personal jurisdiction over Google, plaintiff's unjust enrichment claim against it would fail for the same reasons.