UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

NEBULA GENOMICS, INC.,

Defendant.

Civil Action No: 1:25-cv-12288-BEM

**DEFENDANT NEBULA GENOMICS, INC.'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Local Rule 7.1, Defendant Nebula Genomics, Inc. ("Nebula") respectfully moves this Court to dismiss the putative Class Action Complaint ("Complaint," Dkt. 1) filed by Plaintiff Antoinette Portillo ("Plaintiff"), which asserts a single claim against Nebula under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/15, 513/30, and 513/40. In further support of this Motion, Nebula submits and relies upon the Memorandum of Law in Support of its Motion to Dismiss, the Defendant's Request for Judicial Notice and all Exhibits thereto, and the Declaration of Wallace Neel and all exhibits thereto, filed herewith, and further states as follows:

This action should be dismissed because (1) GIPA does not apply under Massachusetts law; (2) the putative class representative has no standing under Article III because she alleges no

injury cognizable under GIPA; and (3) the Complaint fails to state a claim on which relief can be granted.

*First,* GIPA does not apply where, as here, the parties agreed by contract that Massachusetts law controls their dispute. Massachusetts law honors that contractual choice, and this Court applying Massachusetts law should do the same. Illinois's GIPA statute is of no moment, particularly where Massachusetts law supplies its own protections of individuals' genetic information.

*Second,* Plaintiff has no standing because she has not alleged any facts that indicate she was injured in a manner that gives rise to a GIPA claim. Absent such personally-incurred injury, Plaintiff has no standing that would vest this Court with subject-matter jurisdiction over the dispute, and thus this case should be dismissed under Rule 12(b)(1). Further, her lack of standing renders her incapable of stating a claim on behalf of members of a putative class.

*Third*, and relatedly, Plaintiff does not allege that any of her GIPA-protected "genetic information" was transmitted by Nebula to any third-party. While the pleading recites every buzzword related to online privacy and personal data, it omits the *sine qua non* of a GIPA claim: it never alleges that at least one item of GIPA-protected data regarding Plaintiff was transmitted to a third-party. The Complaint alleges that at the time of filing in 2024, Nebula's web site allegedly sent consumer information about its users to Meta, Google, and/or Microsoft through those tech giants' advertising software[1] that can run in the background on web sites, depending on installation, browser choice, and circumstance.

The gravamen of Plaintiff's claim is that due to that consumer data transfer, "Defendant Nebula disclosed the fact that Plaintiff and the Class had taken a genetic test to third parties,

[1] Meta's "Pixel," Google's "Analytics" and "Tag Manager," and Microsoft's "Conversion Tracking" and "Clarity."

together with Plaintiff's and Class Member's unique identifying information." Compl. ¶¶ 120, 122 (Dkt. 1.) But that is nowhere reflected in the facts alleged.

Instead, the Complaint alleges that Plaintiff purchased a cheek-swab test *kit* from Nebula, "took" that swab test in 2021, submitted a specimen for analysis, and reviewed her own results on Nebula's Internet web site. However, the Complaint does not allege that the occurrence of each of those steps was transmitted to third parties. Rather, the only data concerning Plaintiff that the Complaint alleges was transmitted to a third-party is data reflecting the first step: that Plaintiff "purchased" a testing kit to potentially submit a specimen for analysis. Compl. ¶ 48 (to Meta), ¶ 58 (to Microsoft); 89 (to Google). But even if true, one does not "take a genetic test" by merely purchasing a test kit. Under GIPA, "**genetic testing** " is defined as **"[a] test or analysis of human DNA, RNA, chromosomes, proteins, metabolites, or any other biological analyte or product** that detects or identifies genotypes, mutations, or chromosomal changes." *Id.* (emphasis added throughout.) Nothing in the Complaint alleges the transmission of any indication such a test was conducted. At most, data was transmitting indicate that she prepared to submit a specimen for testing on behalf of herself of someone else.

Even read more broadly, the Complaint fails. GIPA provides a remedy for Illinois users whose "genetic information" is transmitted without permission to a third-party (along with identifying information.) Per its terms, "Genetic information includes

(i) The **individual's genetic tests**;

(ii) The genetic tests of family members of the individual;

(iii) The manifestation of a disease or disorder in family members of such individual; or

(iv) Any **request for, or receipt of, genetic services**, or participation in clinical research which includes genetic

> services, by the individual or any family member of the individual"

410 ILCS 513/10.") (citing 45 C.F.R. § 160.103).(emphasis added). In turn, "**genetic services**" under subpart (iv) is defined as "(1) **A genetic test**; (2) **Genetic counseling** (including obtaining, interpreting, or assessing genetic information); or (3) Genetic education." *Id.* (emphasis added.)

The Complaint does not contain factual allegations that would reflect the transmission of any aspect of that definition of "genetic information" to Meta, Google, or Microsoft (or anyone else). There is no allegation that Nebula transmitted data reflecting that Plaintiff actually submitted a cheek swab specimen for analysis or reviewed the results on Nebula's web site, never mind any allegation that any data reflecting the genetic insights revealed by the lab analysis were ever transmitted to anyone. Those are the allegations required under GIPA, but Plaintiff cannot allege them.

Put differently, if Plaintiff never used that kit to submit a specimen, but data had been transmitted indicating that she had purchased a kit, she would plainly have no claim. Similarly, if she did submit a test but no data was transmitted reflecting that fact, she likewise has no claim. She simply was not injured within the meaning of GIPA.

*Fourth,* mindful of the reality that none of the data transmitted was "genetic information," Plaintiff embellishes the Complaint with a host of allegations regarding imagined data breaches that one of the programs—Microsoft Clarity—may have imposed upon a hypothetical user as of October 2, 2024 (the date as of which all of the allegations of concerning the operation of the web site are stated, per footnotes *passim*). Those hypotheticals required a user in late 2024 to take a specific series of steps to access sub-pages of Nebula's web site; specifically, "clicking on the 'Reporting' option, and selecting 'Traits,' to view different insights on various topics such as 'Appearance & Hormones,' 'Behavior & Perception,' 'Body & Athleticism,' and 'Nutrition &

Diet.' When a user enters the 'Traits' webpage, an HTTP session is sent to Microsoft via Clarity sharing the customer's test results." Compl. ¶¶ 73-74.

But Plaintiff herself can face no such hypothetical, because she ceased using the site in 2023. That alone renders her uninjured. Furthermore, Plaintiff does not allege (1) that she ever took the web-surfing steps that allegedly could cause Microsoft Clarity in 2024 to transmit data containing any results of lab analysis of a user's specimen, (2) that those steps if taken in 2021-2023 would have produced the same alleged transmission through Microsoft Clarity, nor (3) that Microsoft Clarity was even running on Nebula's web site when she used it in 2021-2023. She concedes it was installed "at an unknown date." [2]

In sum, Plaintiff alleges no facts indicating that any "genetic information" of hers was transmitted to anyone but her. The remainder of the Complaint is a hypothetical about what a Plaintiff's law firm might have been able to manipulate the 2024 version of Nebula's web site to transmit about a hypothetical user after taking the time to plumb-and-prompt every feature on the site. But no such hypothetical user is before the Court. There are no facts that allege that even a single Nebula user ever encountered the hypothetical data transmission that Plaintiffs' class action attorneys claim to have been able to manipulate the website to prompt the server to spit-out. Certainly the putative class representative Plaintiff is not alleged to have done it, and that is fatal to the pleading.

Under the *Iqbal/ Twombly* analysis per Rule 12(b)(6), no facts have been alleged which would violate GIPA if presumed true. The Complaint's ominous intonation that "[u]nbeknownst

[2] Plaintiff does not allege that any of the third-party software code that forms the crux of her claims was even installed on Nebula's web site at any time between her initial purchase in March 2021 and her cancellation of the service sometime in the year following her July 2022 renewal. Plaintiff admits to having no knowledge of when any of those programs were in use. Dkt. 1 ¶¶ 47, 57, 71 ("At an unknown date, Nebula installed [each code]").

to its customers, Nebula shares their highly sensitive and personal genetic test results with third parties, entirely without the customer's consent"[3] is nowhere to be found in the form of factual allegations.

WHEREFORE, Nebula respectfully requests that the Court dismiss the Complaint, with prejudice, and grant such further relief as it deems appropriate.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Nebula respectfully requests a hearing to the extent it may assist the Court.

**Certification pursuant to Local Rule 7.1(A)(2)**

Counsel for Defendant Nebula Genomics, Inc. hereby certifies that a conference with Plaintiff's counsel was held by telephone prior to filing this Motion in a good faith attempt to resolve or narrow the issues.

Respectfully submitted,

NEBULA GENOMICS, INC.,

By its attorneys,

/s/ Thomas E. Lent
Thomas E. Lent, BBO # 644970
BARROW LENT LLP
98 N. Washington St., Suite 230
Boston, Massachusetts 02114
(617) 830-5463
tlent@marbarlaw.com

Dated: November 17, 2025

[3] Dkt. 1 ¶ 3.

\- and –

/s/ Wallace Neel
Wallace Neel (Admitted Pro Hac Vice)
WALLACE NEEL PLLC
One Blue Hill Plaza, LL Suite 1509
Pearl River, NY 10965

**CERTIFICATE OF SERVICE**

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on November 17, 2025.

*/s/ Thomas E. Lent*
Thomas E. Lent