# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>     *Plaintiff,*<br><br> -against-<br><br>NEBULA GENOMICS, INC., a Delaware Corporation,<br><br>     *Defendants.* | Case No. 1:25-cv-12288-BEM |

Leave to file granted on Dec. 23, 2025

## DEFENDANT NEBULA GENOMICS, INC.'S
## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS UNDER FED. R. CIV. P 12 (b)(6)

December 22, 2025

WALLACE NEEL PLLC
Wallace Neel, Esq.
One Blue Hill Plaza, LL Suite 1509
Pearl River, NY 10965

*Attorneys for Nebula Genomics, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................... 1

I.    REPLY ARGUMENT 1:  MASSACHUSETTS LAW STRONGLY
PROTECTS GENETIC PRIVACY, CONTRARY TO PLAINITFF'S
MISTAKEN ARGUMENT THAT MASSACHUSETTS LAW PROVIDES NO
REMEDY ............................................................................................... 2

    *A.    Plaintiff is Wrong about Massachusetts Law: A Violation of Section
70G by a Commercial Genetic Testing Company is Actionable under
Massachusetts Law* ............................................................................. 4

    *B.    Section 70G and the Consumer Protection Act (Chapter 93A)
Combine to Give Strong Remedies for Unconsented Disclosures of Genetic
Information* ........................................................................................ 4

        1.    A Section 70G Violation is "Deemed" a Consumer Protection Act
Violation. ............................................................................................ 5

        2.    A Private Cause of Action is Expressly Permitted ......................... 5

        3.    Class Actions are Expressly Permitted............................................ 6

        4.    CPA Provides for Statutory Minimum Damages & Treble Damages
6

        5.    Attorneys' Fees are Mandatory unless a Reasonable Offer was
Rejected ............................................................................................. 7

    *C.    Plaintiff's Entire Argument is Founded on the Incorrect Theory that
Massachusetts Law Provides No Remedy for Unauthorized Disclosure of
Genetic Information* ........................................................................... 7

II.    REPLY POINT 2:  NO CLAIM OR ARTICLE III INJURY IS STATED
UNDER GIPA IN ANY EVENT BECAUSE NO PROTECTED DATA IS
ALLEGED TO HAVE BEEN DISCLOSED ..................................................... 13

    *A.    The Fact Allegations Do Not Claim that Protected Information was
Disclosed* ......................................................................................... 15

    *B.    The Response Does Not Identify Any Fact Allegation that Pushes the
Claim Over the Finish Line* .............................................................. 17

CONCLUSION .................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Delgado v. Meta Platforms, Inc.*,
   718 F. Supp. 3d 1146 (N.D. Cal. 2024)............................................................12

*In re DirecTV Early Cancellation Litig.*,
   738 F. Supp. 2d 1062 (C.D. Cal. 2010).............................................................12

*In re Facebook Biometric Information Privacy Litigation*,
   185 F.Supp.3d 1155, 1169-1170 (N.D. Cal. 2016)....................................10-12

*Hogan v. Amazon.com Inc.*,
   2022 WL 952763  (N.D. Ill. Mar. 30, 2022)....................................................12

*Patterson v Respondus, Inc.*,
   593 F. Supp. 3d 783  (N.D. Ill. 2022)..............................................................12

**Statutes**

410 ILCS 513/15 ............................................................................................1, 14

410 ILCS 513/30(a)..........................................................................................1, 14

Defendant Nebula Genomics, Inc. ("Nebula") respectfully submits this Reply brief in further support of its Motion ("Motion", Dkt. 97) to dismiss the putative Class Action Complaint ("Complaint," Dᴋᴛ. 1) filed by Plaintiff Antoinette Portillo ("Plaintiff"), which asserts a single claim against Nebula under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/15 and 513/30.

## PRELIMINARY STATEMENT

The Motion should be granted. **First**, GIPA does not apply where the parties selected Massachusetts law (and Plaintiff concedes that they did). Plaintiff protests that Illinois law should trump that choice-of-law agreement because, she claims, Massachusetts' genetic privacy law only applies to health care providers, and thus she will be non-suited under Massachusetts law. Therefore, Plaintiff argues, the choice-of-law analysis mandates Illinois law and GIPA.

That is preposterous: the statutory text of Massachusetts' genetic privacy law *expressly applies* its non-disclosure protections to "commercial genetic testing companies" and provides a private right of action, treble damages, and attorneys' fees (and more, *see infra*). *See* M.G.L. ch. 111, § 70G(b).

Plaintiff's choice-of-law argument implodes on the launchpad, because it is based entirely on the notion that a choice-of-law provision cannot apply to leave her without recourse. Plaintiff is wrong: individuals whose genetic

information is disclosed without authorization has strong remedies under Massachusetts law, when correctly understood.

**Second,** even if GIPA were applied, Plaintiff has not stated a claim. Assuming the facts alleged to be true, she would allege only that software programs run by Meta, Google, and Microsoft caused the disclosure from Nebula to those companies the fact that she purchased and registered a testing kit from Nebula's web site. Nowhere does the Complaint allege that any data was transmitted that indicated that (A) a "genetic test"–defined by GIPA  as "[a] *test or analysis* of human DNA, RNA, chromosomes, proteins, metabolites, or any other biological analyte or product that detects or identifies genotypes, mutations, or chromosomal changes"—occurred, nor (B) that any "information therefrom" was transmitted.  Disclosure of one of those categories of information is required for a GIPA claim to arise.  Plaintiff does not, and cannot, allege that any data of either category was disclosed.

For the reasons set forth herein and in the Motion papers, the Complaint should be dismissed with prejudice.

## I.    REPLY ARGUMENT 1:  MASSACHUSETTS LAW STRONGLY PROTECTS GENETIC PRIVACY, CONTRARY TO PLAINITFF'S MISTAKEN ARGUMENT THAT MASSACHUSETTS LAW PROVIDES NO REMEDY

Plaintiff's only claim in this case rests on the application of Illinois' statutory framework for genetic privacy protection, GIPA.  Plaintiff's Response (Dkt 105) concedes that she agreed during sign-up for Nebula's offering that

Massachusetts law would govern.  Nebula therefore correctly argues that Illinois law, including GIPA, is of no moment in this case.

Plaintiff insists, however, that GIPA must apply because—she claims—Massachusetts "Section 70G applies only to disclosure by a 'facility, … physician or health care provider'…. Thus, if Massachusetts law applies, an Illinois resident such as Ms. Portillo has no recourse."  (Resp. at 7.)

The entirety of the Opposition brief rests on that foundational claim, but it is utterly wrong: the Massachusetts Consumer Protection Act[1] and Section 70G *do* provide remedies for anyone who can prove violation of Section 70G by, *inter alia*, a "commercial genetic testing company" including a private civil cause of action to recover damages; a potential right of class action; a right to actual damages; a statutory minimum damages claim of $25; a right to attorneys' fees, costs and disbursements; and in the case of willful violation, up to treble damages.

In other words, if Nebula violated Section 70G's strong privacy protections, Plaintiff would have a claim under Massachusetts law.  Because Plaintiff has this critical point wrong—and indeed, upside-down—and because the "absence" of any remedy for Plaintiff under Massachusetts law is the

---

[1] M.G.L. ch. 93A.  Chapter 93A is widely known as the "Consumer Protection Act."

foundation of the Response's entire choice-of-law analysis, the Response falls apart from the outset.

### A. Plaintiff is Wrong about Massachusetts Law: A Violation of Section 70G by a Commercial Genetic Testing Company is Actionable under Massachusetts Law

By its express terms, Section 70G applies to any "commercial genetic testing company," such as Nebula.  Plaintiff errs when she insists that Massachusetts' genetic privacy statute "appl[ies] only to health care facilities." Resp. at 3 n.1 (citing M.G.L. ch. 111, § 70G(c)).  That is false: subsection (b) of section 70G expressly provides that genetic information held by, inter alia, a "commercial genetic testing company" "shall not be divulged . . . without informed written consent" of the individual, subject only to narrow exceptions such as a court order.  M.G.L. ch. 111, § 70G(b). [2]

### B. Section 70G and the Consumer Protection Act (Chapter 93A) Combine to Give Strong Remedies for Unconsented Disclosures of Genetic Information

---

[2] M.G.L. ch. 111, § 70G (b) provides in full:

> Hospital, dispensary, laboratory, hospital-affiliated registry, physician, insurance institution, insurance support organization, or insurance representative, and commercial genetic testing company, agency, or association reports and records pertaining to any genetic information shall not be public records, and the contents thereof shall not be divulged by any person having charge of or access to the same without informed written consent, except upon proper judicial order or to a person whose official duties, in the opinion of the commissioner, entitle receipt of the information contained therein, or except in connection with life, disability, and long term care insurance as authorized pursuant to chapter 175I or as confidential research information for use in epidemiological or clinical research conducted for the purpose of generating scientific knowledge about genes or learning about the genetic basis of disease or for developing pharmaceutical and other treatments of disease.

### 1. A Section 70G Violation is "Deemed" a Consumer Protection Act Violation.

Subsection (d) of Section 70G "deem[s]" any violation of Section 70G to be a violation of the Consumer Protection Act and expressly grants a private right of action to "[a]ny person whose rights under this section [70G] have been violated":

> (d) Whoever violates any provisions of this section *shall be deemed to have violated* <u>*section 2 of chapter 93A*</u> *[the Consumer Protection Act]. Any person whose rights under this section have been violated,* interfered with, or attempted to be interfered *with may institute and prosecute in his own name and on his own behalf* ….

*Id.* at subsection (d) (emphasis added).

### 2. A Private Cause of Action is Expressly Permitted

Moreover, Section 9(1) of the Consumer Protection Act independently provides any person aggrieved by a violation of Chapter 70G section to bring a plenary claim:

> (1) *Any person*, other than a person entitled to bring action under section eleven of this chapter, *who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two* or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D

5

> *may bring an action in the superior court* ... for damages and such equitable relief....

M.G.L. ch. 93A § 9 (emphasis added.)

### 3.  Class Actions are Expressly Permitted

Section (2) of the Consumer Protection Act  provides a class action remedy "if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons."

### 4.  CPA Provides for Statutory Minimum Damages & Treble Damages

Section (3) of the Consumer Protection Act provides in part that:

> ... if the court finds for the petitioner, *recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater*; or *up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation* of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.

(Emphasis added.)  Notably, the amount to be doubled or trebled excludes any amount paid by insurance. *Id*. at sub-(3) ("For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction

or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.")

### 5. Attorneys' Fees are Mandatory unless a Reasonable Offer was Rejected

The Consumer Protection Act requires an award of attorneys' fees unless the Plaintiff rejected a reasonable settlement offer prior to filing.

> (4) If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action;

Chapter 93A, section 9(4).

In sum, Plaintiff's position that the application to Massachusetts law would leave individuals in her position without remedy is demonstrably false. They would have strong remedies available to them.

### C. Plaintiff's Entire Argument is Founded on the Incorrect Theory that Massachusetts Law Provides No Remedy for Unauthorized Disclosure of Genetic Information

Plaintiff builds her entire choice-of-law argument on the mistaken understanding that Massachusetts' genetic protection law does not apply to Nebula, but rather only applies in the health care context. Resp. at 3 n.1 (citing M.G.L. ch. 111, § 70G(c)). As noted above, that is demonstrably false.

That erroneous premise—that Massachusetts law has no remedy for unauthorized disclosure of genetic information by a commercial genetic testing

company—dooms Plaintiff's entire choice-of-law argument, which is wholly based on that fallacy, *viz*.:

<blockquote>

Resp. at. 7:  "If Massachusetts law applies, an Illinois resident such as Ms. Portillo has no recourse despite the Illinois legislature's clear intention to provide her a remedy for Nebula's conduct."

Resp. at. 8:  "Simply put, application of Massachusetts law would leave Plaintiff with no redress …."

Resp. at. 9  "Even more fundamentally, as discussed above, the Massachusetts law provides no protection for Illinois residents subject to Nebula's invasive and privacy-violating conduct; thus, to the extent the Massachusetts legislature was attempting to achieve some sort of balance it utterly failed to do so."

Resp. at. 11:  "Massachusetts, unsurprisingly, has no interest in protecting the genetic information of residents of another state."

</blockquote>

All of that is objectively untrue.   In view of that, the Response's lament that "[e]nforcement of Nebula's [choice of law] clause here would write out of existence Illinois' fundamental policy"[3] is nonsensical.   In Plaintiff's phrasing,

<blockquote>

[Nebula] appears to recognize that this is fatal to its argument, *contending that an Illinois resident such as Plaintiff could simply sue under Massachusetts' statutory prohibition on unauthorized disclosure of protected information*, codified at M.C.L. ch. 111, § 70G. Defendant's argument proves too much. *By its terms, Section 70G applies only to disclosure by a "facility, … physician or health care provider…. Thus, if Massachusetts law applies, an Illinois resident such as Ms. Portillo has no recourse* despite

</blockquote>

---

[3]  Response at 7.

> the Illinois legislature's clear intention to provide
> her a remedy for Nebula's conduct…"

*See* Resp. at 7 (emphasis added.)  Plaintiff concludes, "[s]imply put**,** application of Massachusetts law would leave Plaintiff with no redress, completely frustrating Illinois' fundamental public policy in favor of protecting her genetic information." *Id.* at 9 (emphasis added.)[4]

That entire argument collapses when one realizes that Section 70G applies to commercial genetic testing businesses.  Yet it is precisely "[f]or those reasons" that Plaintiff claims "courts have routinely rejected similar choice-of-law arguments."  (Resp. at 8.)  Plaintiff then recites a litany of "BIPA" cases—the Illinois Biometric Information Privacy Act.  *Id.*

The cases that Plaintiff relies upon are, unsurprisingly, cases in which the state at issue had no biometric privacy law whatsoever.  Those courts ruled that if the application of non-Illinois law would leave the biometric privacy of an Illinois plaintiff unprotected, then Illinois law would be applied.

In effect, Plaintiff now hopes to take the non-Illinois "BIPA" cases and shoehorn a GIPA case outside of Illinois into that rubric.  But their reasoning is irrelevant here, because Massachusetts does have strong consumer

---

[4] See also Responsive brief at 3, n,.1 ("GIPA's application to any "person" makes it much broader than Massachusetts' statutory protection of genetic information, which applies only to health care facilities. M.G.L. ch. 111, § 70G(c).")

protections for genetic information, meaning that there is no risk of that the Illinois plaintiff's genetic privacy will not be protected.

The instant case therefore bears no resemblance to "BIPA" cases that Plaintiff cites, including the seminal case of *In re Facebook Biometric Information Privacy Litigation*, 185 F.Supp.3d 1155, 1169-1170 (N.D. Cal. 2016), at all.  In *In re Facebook*, the Court applied Restatement (2nd) of the Conflict of Laws § 187 and found that (1) the dispute fell within the choice-of-law clause's scope (which is not contested here); and (2) the "substantial relationship" to the contractually-selected state was easily met Facebook's headquarters were in California at the time of contracting.[5]

The court then turned to the final Restatement § 187 inquiry:  "whether the California choice-of-law clause is contrary to a fundamental policy of Illinois, and if so, whether Illinois has a greater interest in the determination of this case."  *Id.*

The *In re Facebook* court found that Illinois' policy was fundamental and that those interests would be harmed by non-application because to do otherwise would mean that there was no protection at all of the interests that Illinois law sought to protect:

> Unlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data and has not implemented any specific protections for that right or afforded a private cause of action to enforce violations of it. *See In re DirecTV*

---

[5] Plaintiff does not argue that this dispute is not within the choice-of-law clause at issue.

> *Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1088 (C.D. Cal. 2010) (declining to enforce Florida, Illinois, New Jersey, Oregon, and Virginia choice-of-law provisions because the chosen states lacked consumer protection statutes comparable to California's).

*In re Facebook* at *18.   The court found that as a result, Illinois would suffer greater policy-impairment if BIPA was not applied than California would suffer if it was applied, observing " Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied."

None of that reasoning applies here, though, because this case is the opposite: whereas California had no biometric privacy protection law, and thus left claimants unprotected and without remedy, Massachusetts already has a robust regime of genetic privacy protection laws that not give claimants all of the bells-and-whistles that Illinois does, and even expressly deems an unlawful disclosure of genetic information to be a violation of the Consumer Protection Act,  actionable by the individual in a private suit with trebling and legal fees.

Put differently, none of the concerns that animated *In re Facebook* apply here, because Illinois claimants are well-protected by Massachusetts law. Importantly, nothing in the Response quibbles with any aspect of the protections provided by Massachusetts' Section 70G and Consumer Protection Act.  There is no argument that, for example, "genetic information" is too

narrowly defined, or that "testing" is under-inclusive.[6]   The only argument is that Massachusetts has no remedy at all where the alleged disclosing party is not a health care provider, but that argument is mistaken.

And make no mistake: every case cited in the Response is the direct progeny of *In re Facebook*.  For example, *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1153 (N.D. Cal. 2024) was an Illinois BIPA filed in the Northern District of California.  The Court applied BIPA despite a California choice-of-law clause while block-quoting *In re Facebook*: "California has no law or policy equivalent to BIPA" and thus not applying it would negate Illinois' interest in protecting biometric privacy.

The same with *Patterson v Respondus, Inc.*, 593 F. Supp. 3d 783, 811-13 (N.D. Ill. 2022), in which the Northern District of Illinois Court cited *In re Facebook*  to apply BIPA "[b]ecause applying Washington law would leave Plaintiffs without recourse under BIPA or any analogous right of action [under Washington state law]."

The same again with *Hogan v. Amazon.com Inc.,*  2022 WL 952763, at *4 (N.D. Ill. Mar. 30, 2022), wherein the Northern District of Illinois court cited

---

[6] The brass-tacks reality is that Plaintiff wants Illinois's GIPA to apply here for one reason: money.  Actual damages are recoverable in either state, but Illinois's GIPA provides a statutory minimum damage award of $2,500.00, whereas Massachusetts' minimum damage award is $25.   Plaintiff does not argue, though, that the Massachusetts' legislature's determination that permitting recovery of actual damages with a $25 per violation minimum, plus trebling and attorneys' fees, must be subjugated to the choice of the Illinois legislature to impose minimum damages of $2,500.00.

*In re Facebook* and applied BIPA despite a Washington choice-of-law clause because "if Washington law applies, Hogan would be foreclosed from suing under BIPA, and would be unable to bring suit on her own behalf."

None of those cases are of any moment here because the Massachusetts Consumer Protection Act gives robust protection to any individual whose genetic information is unlawfully divulged.   The bedrock of the entire Responsive brief is false, and therefore all citations to *In re Facebook* and its progeny are irrelevant: Massachusetts law has long-standing and robust protections for genetic privacy.   For those reasons and the reasons in the moving brief, GIPA should not apply to this matter.

## II.    REPLY POINT 2:   NO CLAIM OR ARTICLE III INJURY IS STATED UNDER GIPA IN ANY EVENT BECAUSE NO PROTECTED DATA IS ALLEGED TO HAVE BEEN DISCLOSED

The Response attempts to salvage Plaintiff's claims by insisting that the Complaint "lays out, in detail, how Nebula shares genetic information with Meta, Google, and Microsoft," and that it "alleges repeatedly that Plaintiff's genetic information . . . was transmitted by Nebula to each technology

behemoth." Resp. at 1.    But those are conclusory buzzwords, not fact allegations.  The facts alleged in the Complaint itself do not state a claim.

For example, the Motion reprinted in full the GIPA definitions, and noted that the allegations of the Complaint do not fit them.  Plaintiff brings her claims under two GIPA sections: 15(a) and 30:

### 15(a): Confidentiality of genetic information

*Genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing* in accordance with Section 30, by that individual to receive the information.

### Section 30: Disclosure of person tested and test results

No person may disclose or be compelled to disclose *the identity of any person upon whom a genetic test is performed or the results of a genetic test* in a manner that permits identification of the subject of the test.

(410 ILCS 513/15(a), 30 (emphasis added).

In turn, "genetic testing" is defined as "[a] *test or analysis* of human DNA, RNA, chromosomes, proteins, metabolites, or any other biological analyte or product that detects or identifies genotypes, mutations, or chromosomal changes." *Id.*

Thus, setting aside the identifying-information component, the Complaint must allege that Nebula transmitted information that indicates that (1) a "test or analysis of human DNA, RNA, [etc.]" occurred, and (2) either (A) the fact that it occurred or (B) **"information derived from"** the test or

analysis was released to someone not "authorized, in writing" by the individual tested. Therefore, if no data was transmitted that indicated that (1) a "test or analysis of human DNA, RNA, [and the rest of the list]" occurred, then no claim arises under GIPA.

The Complaint does not allege that any data was transmitted that indicates that Plaintiff's genetic material underwent a "test or analysis of human DNA, RNA, [and the rest of the list]."

The only data that is alleged to have been transmitted to Google or Meta is the fact that she purchased a testing kit, which is not the occurrence of a "test or analysis of human DNA, RNA…." and so on.

### A. The Fact Allegations Do Not Claim that Protected Information was Disclosed

Below are the specific allegations of what is alleged to have been transmitted in the Complaint:

**Meta**: Plaintiff alleges that the "Facebook pixel" was programmed to "transmit to Meta certain information" including "information regarding consumers' *purchases and registrations of genetic testing kits*," and to "*send this information* to Meta ….." Complaint, ¶¶ 48–49 (emphasis added).

**Google**: Plaintiff alleges that the "Tag Manager" code sends Google data "confirming that the customer has *completed the signup process and*

*registered a DNA test kit,"* and that it "also discloses to Google when a customer has *purchased a testing kit*." *Id.* ¶¶ 88–89 (emphasis added).

**Microsoft**: The Complaint alleges that "Microsoft Conversion Tracker" sent data "confirming that the customer has completed the signup process and *registered a DNA test kit*" and then "discloses to Microsoft when a customer has *purchased a testing kit*." Id. ¶¶ 60–61. Regarding "Microsoft Clarity." The Complaint alleges that on the Nebula website "[c]ustomers can access" a "complimentary report on different genetic traits associated with their genome sequence." Id. ¶ 73. Then, "[w]hen a user enters the 'Traits' webpage, an HTTP session is sent to Microsoft via Clarity sharing the customer's test results." Id. ¶ 74. The Complaint then depicts a screenshot with red-outlined phrases such as: "'Below average genetic predisposition to' , 701, 670,700, [429, 27], 'class= paper-trait.'" Id. ¶ 75 (reprinted verbatim).

In sum, Meta, Google, and Microsoft are only alleged to have been disclosed data indicating that she purchased and registered a testing kit, not that she actually underwent a "test or analysis of DNA…" and so on. The only allegation that might state a claim that the "information derived" from her test relates exclusively to Microsoft Clarity via the "Traits" subpage and other subpages. But there is no allegation that Plaintiff herself ever accessed the "Traits" sub-page, never mind that she did so at a time when the results of her

genetic test or analysis were already held by Nebula (as they would have to be to be transmitted).

Plaintiff has alleged no injury.  She alleges that Nebula transmitted that she bought a testing kit online.   She does not allege that once she submitted a sample that went through "test or analysis of DNA" and so as GIPA requires, either (1) the fact of that test occurring or (2) any information therefrom" was disclosed to anyone.   There is no Article III standing and no claim alleged under GIPA.

### B. The Response Does Not Identify Any Fact Allegation that Pushes the Claim Over the Finish Line

The Response's attempts to identify qualifying allegations is instructive for what it does not contain.

**On page 15,** the Response  characterizes the Complaint as alleging "the Microsoft Conversion Tracker, like the Facebook pixel, disclosed to Microsoft that Plaintiff had requested genetic services by purchasing and registering her genetic test. Dkt. 1, ¶¶ 58-61."

But that is not what the cited Paragraphs (¶¶ 58-61) say; they discuss Microsoft only, and they expressly state that the only transmitted data indicated the purchase of a testing <u>kit</u>, not data indicating that a "test or

17

analysis of DNA [etc.]" had occurred; i.e., the GIPA definition of "genetic

testing":

> 58. Nebula programmed this tracker to collect and transmit to Microsoft certain information about the online conduct of consumers on its website, including information regarding consumers' purchases and registrations of genetic testing ***kits***.
>
> 59. Nebula programmed its website to send this information to Microsoft along with the consumer's unique MUID contained in the MUID cookie.
>
> 60. Specifically, once a user signs up on Nebula.org, an HTTP session is sent to Microsoft confirming that the customer has completed the signup process and registered a DNA test ***kit***, as shown in the following image:  **[image depicted]**
>
> 61. Nebula also discloses to Microsoft when a customer has purchased a testing ***kit***, as shown in the following image: **[image depicted]**

*Id.* (Emphasis added).  The next paragraph—which Plaintiff does not cite—

attempts to use those individual factual allegations that do not allege that

Nebula disclosed the occurrence of, or results of, a "genetic test" as the basis

for the conclusion that Nebula did disclose the occurrence of a "genetic test":

> 62. Nebula does not disclose to its users that it sends such information to Microsoft, nor does it seek or obtain its users' consent to send such information to Microsoft. *Accordingly*, for every Nebula user – including Plaintiff and the Class – who has visited Nebula.org's website and used its DNA analysis services, *Nebula has communicated to Microsoft that the user has undergone genetic testing*, in violation of GIPA.

*Id.* (emphasis added).  But the statement "that the user has undergone genetic

testing" is a conclusion not supported by the facts, which expressly state that

the only data transmitted indicates that a test *kit* was purchased. The non-conclusory factual allegations are that when a user registers and purchases a kit for the potential use in submitting a specimen for testing, the fact of that purchase of a kit is transmitted. No factual allegation alleges or indicates any manner in which data was transmitted which divulged the fact of, or results of, a "test or analysis" of a specimen as required by GIPA.

**On page 13,** the Response argues that "Plaintiff took a genetics test and uploaded it to Nebula's website. The Complaint further alleges that Nebula disclosed this information to Meta, Microsoft and Google through their cookies and trackers along with Plaintiff's PII." That begs the question, where was this alleged? No citation is given.

**On Page 14**, the Response argues that "Plaintiff has alleged that she provided her genetic information to Nebula and reviewed analyses of that information on Nebula's website; these allegations*, together with the detailed allegations of how Nebula discloses its users' genetic information and PII to Meta, Microsoft and Google via the cookies and trackers on its website*, are sufficient to state a claim under GIPA.

But again, the "detailed allegations of how Nebula discloses its users' genetic information" do not allege that any data was transmitted that indicated that a test had occurred, never mind the results of that test. As discussed above, the utter limit of the allegations concerning Meta and Google

amount to allegations that the fact of the purchase of a <u>kit</u> is transmitted. Nothing in that data indicates that a "test or analysis" occurred.

And as also discussed above, the entire discussion of what may be transmitted via Microsoft Clarity is irrelevant, because Plaintiff does not allege that she used the "Traits" sub-page and other sub-pages that allegedly send genetic trait data to Microsoft.

No amount of obfuscation can alter the fact that Nebula's conduct, even in Plaintiff's retelling, was within the boundaries of GIPA.  There is no injury and no GIPA claim here, even if Illinois law were applied.  The Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Nebula respectfully requests that this dismiss the Complaint for failure to state a claim with prejudice.

Dated: December 22, 2025

Respectfully submitted,

BARROW LENT, LLP
<u>Thomas E. Lent, Esq.</u>
98 N. Washington Street, Suite 230
Boston, MA 02114
617-830-5463 ;
*tlent@marbarlaw.com*

<u>/s/ Wallace Neel</u>
Wallace Neel, Esq.
*Admitted Pro Hac Vice*
WALLACE NEEL PLLC
One Blue Hill Plaza, LL Suite 1509
Pearl River, New York  10965
Tel. (646) 524-6502
Email: wallace@wallaceneel.com

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on December 23, 2025, and that this document was sent by email to Plaintiff's counsel Tom Hanson at 5:50 PM on December 22, 2025 due to ECF failures.  Mr. Hanson responded to confirm receipt and wished me a Merry Christmas.

*/s/ Wallace Neel*
Wallace Neel
