**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANTOINETTE PORTILLO,          ) | |
|                        ) | |
|        **Plaintiff,**        ) | |
|                        ) | **Civil Action No.** |
|        **v.**                  ) | **25-12288-BEM** |
|                        ) | |
| NEBULA GENOMICS, INC.,     ) | |
|                        ) | |
|        **Defendant.**       ) | |
| | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

Plaintiff Antoinette Portillo ("Portillo") brought this class action under the Illinois Genetic Information Privacy Act ("GIPA") after Defendant Nebula Genomics, Inc. ("Nebula") disclosed customers' genetic information to third parties.  Before the Court is Nebula's motion to dismiss. For the reasons set forth below, the Court will deny Nebula's motion.

I.     **Background**

A.     **Statutory Background**

GIPA was enacted in 1998 to more rigorously protect genetic testing information.  *See* 410 Ill. Comp. Stat. 513/5 ("Despite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law.").  Section 15(a) of GIPA mandates that "[g]enetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing

in accordance with Section 30, by that individual to receive the information." *Id.* 513/15(a).

Section 30 provides that "[n]o person may disclose or be compelled to disclose the identity of any

person upon whom a genetic test is performed or the results of a genetic test in a manner that

permits identification of the subject of the test." *Id.* 513/30.  GIPA provides a private right of

action to "[a]ny person aggrieved by a violation of this Act." *Id.* 513/40(a).

### B.    Factual Background

Nebula is a commercial genetics company that offers DNA testing and DNA analysis of

Nebula DNA tests and DNA tests from other genetic testing companies.  Dkt. 1 ("Complaint" or

"Compl.") ¶¶ 27–28.  Nebula's website characterizes its service as "Privacy First DNA Testing"

and states that while "Other DNA Tests" will "[s]ell customer genomic data," Nebula customers

can "[a]ccess technology that enables you to have full ownership and control over your genomic

data." *Id.* ¶ 30.  Nebula's website anticipates that "the primary reason why people haven't had

their DNA sequenced is due to concerns about privacy and control of genetic data" and states that:

> We believe the solution for private DNA testing lies in technology rather than
> policies, which is exactly the approach of Nebula Genomics.  What sets Nebula
> apart is that we're committed to developing technology to protect the privacy of
> your genetic data and enable you to share it controllably and securely.

*Id.* ¶ 31.  Despite these commitments, according to the Complaint, Nebula shares its customers'

information with Meta, Microsoft, and Google via analytics and advertising tools enabled on

Nebula's website, specifically Facebook pixel, Microsoft Conversion Tracking, Microsoft Clarity,

Google Analytics, and Google Tag Manager. *Id.* ¶ 32.[1]

In or around March 2021, Portillo created an account through Nebula's website and

subsequently purchased and took a Nebula genetics test. *Id.* ¶ 97.  Portillo requested and viewed

---

[1] Specific factual allegations regarding the information shared and the mechanism by which information is shared to third parties are discussed in more depth below.  *See infra* Section III.B.

a Nebula report analyzing the results of her genetic test. *Id.* ¶ 98. While Portillo had a Nebula membership, she "regularly accessed the Nebula app to review various information provided by Nebula based on the results of her genetic test." *Id.* ¶ 100. Portillo alleges that "when . . . Portillo obtained and reviewed Nebula's analysis of her genetic information, Nebula shared her genetic information with Meta, Microsoft and Google. Such information included not only the fact that she had taken a genetic test, but also specific information regarding her genetic attributes." *Id.* ¶ 102.

Nebula never informed Portillo that her genetic information would be disclosed to a third party when she obtained and viewed the Nebula report analyzing her genetic test, nor did she consent to Nebula disclosing it. *Id.* ¶¶ 104–05. Portillo cancelled her Nebula membership after purchasing renewals in July 2021 and in July 2022. *Id.* ¶ 99. Nebula's Terms of Use contains a Massachusetts choice of law provision. Dkt. 100-1 at 9.[2]

### C.    Procedural Background

Portillo filed a class-action complaint in the Northern District of Illinois on October 10, 2024, alleging a violation of GIPA against Nebula and unjust enrichment against Meta, Facebook, and Google. Compl. ¶¶ 33–36. Meta, Facebook, and Google moved to dismiss, Dkts. 45, 48, 51, and Nebula moved to transfer or dismiss, Dkt. 54. On July 24, 2025, Judge Cummings of the Northern District of Illinois dismissed Meta, Facebook, and Google from the case and granted Nebula's motion to transfer to this District. Dkt. 73.

On November 17, 2025, Nebula moved to dismiss the single remaining claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 97. The Court held a hearing on the motion on February 10, 2026, and the Court took the matter under advisement.

---

[2] The Court takes judicial notice of the Terms of Use. *See* Dk. 100 (Nebula's Request for Judicial Notice).

## II.    Legal Standard

"When considering a motion to dismiss under subsection 12(b)(1) . . . , the Court should apply a standard of review similar to that accorded a dismissal for failure to state a claim under subsection 12(b)(6)." *Bauersachs v. Massing*, 2019 WL 1961077, at *2 (D. Mass. 2019) (internal quotation marks and citation omitted).  "[A] complaint's well-pleaded facts must be credited as true, and all reasonable inferences from the complaint must be drawn in the plaintiff's favor." *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *3 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020).  The Court must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Discussion

### A.    Choice of Law

Nebula argues that the Massachusetts choice of law provision in the Terms of Use governs and that Portillo's Complaint must be dismissed because Portillo may not make a claim pursuant to GIPA under Massachusetts law.  Dkt. 98 at 14.  However, the Court must first determine whether the provision applies to the claim at issue and would therefore preclude making such a claim under the law of another state.  *See Kleiner v. Cengage Learning Holdings II, Inc.*, 66 F.4th 28, 31 (1st Cir. 2023).  The Court "begin[s] with the language of the choice of law clause itself" when "determining the scope of that clause."  *Id.*

The Terms of Use states that "[t]his Agreement shall be construed according to the laws of the State of Massachusetts."  Dkt. 100-1 at 9.  The First Circuit and Massachusetts Supreme Judicial Court have construed comparable provisions narrowly, such that the provision governs only the agreement itself, but does not preclude pursuing contract-adjacent claims under the law of another state.  *See Kleiner*, 66 F.4th at 32 (concluding that where the clause stated "'[t]his

4

Agreement shall be construed and governed' according to New York law" but "d[id] not otherwise select any state's law as governing the parties' rights and obligations that are created by statute," "the agreement d[id] not suggest that the parties agreed that New York law would govern the . . . breach[] [of] a statutory duty imposed by Massachusetts law." (first alteration original)); *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 390 F. App'x 1, 2 (1st Cir. 2010) (holding that a provision stating "Massachusetts law exclusively shall govern all terms of this Agreement" did not preclude bringing a claim under the Georgia Wholesale Distribution Act); *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 580 n.9 (1995) ("The agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law.  The choice of law clause does not purport to bar the application of G.L. c. 93A to the parties' dealings in Massachusetts.").

Because the narrow choice of law provision at issue does not purport to govern the parties' rights or obligations more broadly, the Court concludes that the provision does not preclude Portillo from bringing a GIPA claim under Illinois law.[3]

### B.    <u>Standing</u>

In the alternative, Nebula moves to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) on the ground that Portillo, the named plaintiff, alleged no actionable injury under GIPA.  Dkt. 98 at 17.  "To establish standing, a named plaintiff must 'clearly . . . allege facts demonstrating' that she '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,

---

[3] Having determined that the choice of law provision does not apply to the sole claim in the Complaint, the Court need not address the parties arguments' regarding whether enforcing the provision would be contrary to a fundamental policy of Illinois.  *See Hodas v. Morin*, 442 Mass. 544, 550 (2004).

338 (2016)).  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Portillo alleges that Nebula shares customers' information, including her own, with Meta, Microsoft, and Google through its use of Facebook Pixel, Microsoft conversion tracking, Microsoft Clarity, Google Analytics, and Google Tag Manager when website users sign up on the Nebula website, purchase and register Nebula kits, and request and view reports analyzing their test results.  Compl. ¶¶ 32, 34, 47–52, 57–63, 71–75, 77–81, 87–91.  As to her own interactions with the Nebula website, Portillo alleges, inter alia, that in 2021 she created an account on Nebula.org, purchased and took a Nebula DNA test, and requested and reviewed a Nebula report analyzing her genetic test.  Compl. ¶¶ 98–99.  Plaintiff further alleges that Nebula never informed her that it would share her genetic information with anyone when she requested and reviewed Nebula's analysis of her genetic test and that she never gave Nebula consent to do so.  *Id.* ¶¶ 104–05.

Nebula contends that Portillo has nevertheless failed to establish standing because "[t]he Complaint discusses at length the alleged functionality of the site today, but does not purport to describe what it was in 2021 to 2023," and "[w]hen a plaintiff 'provides no additional factual information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information,' dismissal must result."  Dkt. 98 at 18 (quoting *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083–84 (W.D. Wash. 2024)).  Specifically, Nebula highlights that Portillo alleges each technology was installed "[a]t an

unknown date" and that Portillo fails to make allegations about the functionality of the website or third-party software when she was using the website.  *Id.*; *see also* Compl. ¶¶ 47, 57, 71.[4]

That technology in use in October 2024 was also in use for some period of time between 2021 and 2023 is a reasonable inference the Court is permitted to make at this stage, before Portillo has had the benefit of discovery.  *See Jorge v. Galarza-Soto*, 124 F. Supp. 3d 57, 64 (D.P.R. 2015) (Plausibility "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 556 (2007))).

### C.    Failure to State a Claim

Nebula argues, further, that Portillo failed to allege that protected "genetic information" was transmitted by Nebula's website and therefore failed to state a claim upon which relief can be granted under GIPA.  Dkt. 98 at 20.  GIPA defines "genetic information" to include, as relevant here, an "individual's genetic tests" and "[a]ny request for, or receipt of, genetic services," and defines "genetic services" as "(1) [a] genetic test; (2) [g]enetic counseling (including obtaining, interpreting, or assessing genetic information); or (3) [g]enetic education."  410 Ill. Comp. Stat. 513/10.

Nebula contends that, assuming arguendo that the website operated from 2021 to 2023 the same way that it operates today, the Complaint only alleges that information related to Portillo's creating an account and registering for and purchasing a kit was transmitted to third parties, not information about the test results themselves.  Therefore, Nebula argues, no "genetic information" was disclosed in violation of GIPA.

---

[4] The Complaint relies on descriptions of the relevant third-party software and analytics taken from their websites as of October 2024.  *See, e.g.*, Compl. ¶¶ 33 n.11, 40 n.14, 41 n.15, 44 n.16.

Information about genetic test results themselves is only alleged to have been disclosed to Microsoft via Microsoft Clarity:

> [F]or Nebula users such as Plaintiff and Class Members who have uploaded their DNA test kit results to Nebula, Nebula offers a complimentary report on different genetic traits associated with their genome sequence. Customers can access this report by clicking on the "Reporting" option, and selecting "Traits," to view different insights on various topics such as "Appearance & Hormones," "Behavior & Perception," "Body & Athleticism," and "Nutrition & Diet." When a user enters the "Traits" webpage, *an HTTP session is sent to Microsoft via Clarity sharing the customer's test results. This session includes the user's specific [Microsoft user ID], as well as his or her genetic information* such as, for example, the user's likelihood to have a certain skin pigmentation, hair thickness, or testosterone level.

Compl. ¶¶ 73–74 (emphasis added). Though this is presented as a hypothetical, the Complaint includes additional factual allegations regarding Portillo's use of features on Nebula's website, specifically that she "requested a report on Nebula's analysis of her genetic test, which she then reviewed." *Id.* ¶ 98. As discussed above, the Court is permitted to make the reasonable inference that the "report on Nebula's analysis of [Portillo's] genetic test" is the same "report on different genetic traits associated with their genome sequence" alleged to be transmitted Microsoft via the "Traits" webpage on the Nebula website. *Portier*, 2019 WL 7946103, at *3. Because the information contained in the report doubtless constitutes "genetic information" as defined by GIPA, the Court need not consider whether information about creating an account or registering for and purchasing a kit is itself "genetic information" protected by the statute. Accordingly, Portillo has stated a claim upon which relief can be granted under GIPA.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Nebula's motion to dismiss is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy

Dated: March 10, 2026                     Judge, United States District Court